By the Court. Duer, J.
This case derives some importance from the fact that the tax-payers of the city are more or less interested in its decision.
The only questions that we propose to consider and decide, are those which relate to the validity and construction of certain sections in the ordinance of the common council, which is referred to in the complaint, for it will be seem, hereafter, that if the views of the learned counsel for the plaintiffs, upon these questions, cannot be sustained, the judgment appealed from must, of necessity, be affirmed.
The contention, on the part of the plaintiffs, is,
First, That sections 494 and 495 of the ordinance of the common council, were void when enacted, as plainly repugnant to certain provisions in the act of 1849 amending the charter of the city; or,
Second, That these sections, if not void in their origin, were fully repealed by the 12th section of the act of April, 1853.
We do not think that either proposition can rightfully be made a ground of our decision; to neither can we give our assent. As to the first, in our judgment, the provisions of the ordinance of the common council and those of the act of 1849, are so far from being manifestly repugnant, that, when properly examined and compared, they will be found to be, in all respects, consistent and harmonious.
Section 494 of the ordinance provides that all contracts on the part of the corporation must be authorized by the common council, either by an appropriation previously made therefor, by ordinance, or resolution; and when so authorized, with certain exceptions, shall be made by the department under whose direction the supplies are to be furnished, or the work performed; and section *454 495 provides, among other things, that no contract, for the payment of which an appropriation has not previously been made, shall be signed or executed until such contract, and all the estimates relating thereto, shall have been laid before the common council.
We certainly think that the fair construction of the section is, that no contract for supplies or work can rightfully be made by any department of the city government, until it shall have been authorized by a previous appropriation, ordinance, or resolution, of the common council; and it will be seen hereafter that this construction is consistent with the provisions of the act of 1849 ; but we are not disposed to say, that a contract, although not previously authorized, is not valid, when all the estimates relating thereto had been laid before the common council, and a necessary appropriation then been made. Perhaps, to such a case, the maxim that a subsequent adoption is equivalent to a prior authority, would be held to apply. The argument, however, on the part of the plaintiffs, is, that whatever construction may be given to these sections, they are wholly void, so far as they give any power to the common council to direct any contract to be made, or to make any appropriation for its completion ; and if this allegation be well founded, it follows that the head of each department, and not merely the street commissioner, has an unlimited and absolute control over the expenditures of his' department; and it follows that, in the exercise of his own discretion, he may determine what contracts for service or work, belonging to his department, shall be entered into, and what sums appropriated to their completion, without being subject to the control or interference of the common council, however flagrant may be the abuse of his discretion, and mischievous the consequences to which it leads. It is possible that the legislature intended to vest in the heads of departments this unlimited and uncontrolled authority, but that such was its intention we deem to be highly improbable. We think the words must be clear and explicit, or the implication plain and necessary, to justify the conclusion that the plaintiffs require us to adopt.
The provisions in the act of 1849, which are relied on as evidence that the intention of the legislature was such as has been asserted, are to be found in sections 14 and 9 of that act. Sec *455 tion 14 merely declares that the department of streets and lamps shall have cognizance, among other things, of cleaning the public streets, but it is obvious that these words may be fully satisfied by giving to the department a supervisory power over the cleaning of streets, and making it its duty to see that all contracts for that purpose shall be faithfully executed. They do not expressly, or by any reasonable implication, prohibit the common council from authorizing, or ratifying, all contracts to be made by the department, by a suitable ordinance, resolution, or appropriation. They are, therefore, not at all inconsistent with those provisions of the ordinance in question, to which they are alleged to be repugnant. '
The question, therefore, whether this repugnance exists, turns entirely upon the construction to be given to the 9th section of the act of 1849, which declares “ that the executive power of the corporation shall be vested in the mayor, the heads of departments, and such other executive officers as shall be, from time to time, created by law, and that neither the common council, nor any member or committee thereof, shall perform any executive business whatever.” Executive business includes all acts which a public officer is directed, or authorized, to perform by some legislative authority that he is bound to obey. The section forbids any such act to be performed by the common council, and vests an executive authority to perform them in the mayor and heads of departments. Hence, if an ordinance of the common council, directing a particular contract to be made, relative to any work of which the street department has cognizance, or appropriating a definite sum for the payment of the contract when made, is an executive act, there would seem no escape from the conclusion that the ordinance, as inconsistent with the expressed will of the legislature, must be void.
But the conclusive reply is, that when the work to be contracted for is for the benefit of the public, and is to be paid for out of a public fund, the authority to make the contract and an appropriation for its payment are not executive acts, but are properly and purely acts of legislation, and have uniformly been considered and treated as such by the legislature of the state as well as by the common council of the city. They are not, in their own nature, executive acts, nor are they declared to be so by any express *456 words in the act of 1849; hence the argument built upon the 9th section of the act falls to the ground.
Nor is that all. There are other sections in the act of 1849 which, to our minds, render it apparent that it was the intention of the legislature that the heads of departments, in making contracts for services or work in their respective departments, should be subject to the direction and control of the common council; in other words, that the common council should possess and exercise, in relation to such contracts, the very powers that, in order to sustain the argument for the plaintiffs, are now denied to it.
Thus § 23 declares, that “ all contracts to be made or let by the authority of the common council, for work to be done or supplies to be furnished, shall be made by the appropriate heads of departments, under such regulations as shall be established by ordinances of the common council.” These provisions, in our judgment, are alone sufficient to prove that the intentions of the legislature, as to the powers to be exercised by the common council, were exactly such as we have stated. They plainly give to the common council the power of determining what contracts shall be made in each department of the city government for work to be done or supplies to be furnished, and of prescribing by proper ordinances the course to be followed by the head of the department in making the contracts, that the common council has authorized and instructed him to make. It appears to us that sections 494 and 495, considering each section as an ordinance, were ordinances of this character, and the regulations which they contain a legitimate exercise of the powers that the provisions we have recited—if not in terms, yet by their necessary construction—were meant to confer.
Section 23 is set forth in the complaint; but there are other sections in the act of 1849 not set forth in the complaint nor cited on the argument which, we think, are conclusive to show that the intentions of the legislature were exactly those which we have held that section 23 sufficiently expresses.
The sections to which we refer are sections 21 and 19.
Section 21 provides that “the several executive departments, and the officers and clerks thereof, shall be subject to the legislative regulations and directions of the common council, so far as the same shall not be inconsistent with this act.” We have already shown that the regulations alleged to be void in sections *457 494 and 495 are legislative in their scope and objects, and as such not inconsistent with any provisions in the act of 1849; they are, therefore, regulations that the common council had authority to make, =and the executive departments and their officers were bound to obey.
We pass to section 19, the terms of which, if we mistake not, put the question we are considering completely at rest. Among other things, this section provides that “ no expense shall be incurred by any of the departments or officers thereof, whether the object of the expenditure shall have been ordered by the common council or not, unless an appropriation shall have been previously made concerning such expense.”
We can see no reason whatever, for doubting that among the expenses that are here forbidden to be incurred without a previous appropriation are the necessary expenses of fulfilling a contract made by the head of a department, although the contract may have been awarded by him to the lowest bidder. Indeed, we are satisfied that contract expenses are those that were principally in the view of the legislature, and not those comparatively trifling ones for which no contract is required. Hence the provision in section 495 of the ordinance of the common council that “ no contract, for the payment of which an appropriation has not previously been made, shall be signed or executed until such contract and all the estimates relating thereto shall have been laid before the common council, and an apprppriation been made therefor,” so far from contradicting in any respect the act of 1849, carries out by expressing more fully some of its actual provisions. The law and the ordinance, although in different terms, equally forbid that the necessary expenses of a contract made by the head of a department shall be incurred until án appropriation to cover those expenses shall have been made, and we think they equally imply, that whether such an appropriation shall or shall not be made rests entirely in the discretion of the common council. Hence, had there been no ordinance on the subject, the necessity created by the law of a previous appropriation to warrant the completion of a contract, would still exist, and, unless the law has been repealed, the refusal or omission by the common council to make the appropriation would still be a bar to the maintenance of an action like the present, against the corporation or any of its officers.
*458 It follows from the observations that have been made, that the provisions in sections 494 and 495, were not as is alleged, void in their origin, but on the contrary, were binding from the time of their enactment on the executive departments, their heads and officers; consequently, unless they were repealed by the act of 1853, they were in force when the contracts mentioned in the complaint were awarded to the lowest bidders; so that if it shall appear that the conditions they prescribe have not been complied with, it is certain that the present action cannot be maintained. The question of their repeal is therefore next to be considered.
The only section in the act of 1853, to which the counsel for the plaintiffs referred in support of his argument, is the 12th, and the only words in that section upon which he relied, are those which declare that “ all contracts for work to be done or supplies to. be furnished for the corporation when given, shall be given to the lowest bidder with adequate security.” If the words, “shall be given to the lowest bidder” must of necessity be understood as meaning that a contract for work or supplies must be delivered fully executed to the lowest bidder, and when so delivered be valid in his hand, although not made under any previous authority from the common council, and although no appropriations for its expenses shall have been made, it cannot be denied, that they effectually repeal, not only the provisions of the ordinances —as the sections in question may with propriety be termed—but equally those in the act of 1849, (§ 19,) with which those of this ordinance substantially correspond.
It is not easy to believe that this sweeping repeal was contemplated by the legislature. It is not easy to believe, that if intended, the intention would not have been expressed in positive terms; hence, if the words, “ shall be given to the lowest bidder,” may be understood in a sense not involving the repeal contended for, it is such an interpretation that we shall hold ourselves bound to give to them. It is an elementary rule that an existing statute can only be abrogated by express words, or by a necessary implication. Where there are no express words of repeal, a subsequent statute never operates as repeal of a prior, unless their provisions are manifestly inconsistent, and by no reasonable construction can be reconciled. When a consistent interpretation may be given to .provisions apparently conflicting, it is the duty of the *459 court to adopt it as probably expressing the true intention of the legislature. We think that there is no difficulty in applying those rules to the case before us. We are satisfied that the words “shall be given,” etc., in the 12th section of the act of 1853, may and ought to be understood in a sense that will render them entirely consistent with the provisions in section 19 of the act of 1849, and consequently with the ordinances of the common council, nor do we doubt, that the interpretation that we shall follow is that which truly expresses the intention of the legislature.
Section 501 of the ordinance referred to in the complaint, provides that where contracts have been proposed for a particular work, in conformity to the'terms prescribed by previous sections of the ordinance, the head of the department in which the work is to be performed, “ shall award the contract to the lowest bidder,” and our conviction is, that these words in the ordinance and the words in the act of 1853, that “ the contract, when given, shall be given to the lowest bidder,” express, and were designed to express, exactly the same meaning, and it is plain, that the latter words thus construed are entirely consistent both with the act of 1849, and with the ordinances of the common council. The contract must be given to the lowest bidder, but it is not to be signed and executed until an appropriation for its expenses has been made, and in this, if the word “given,” as we hold, expresses no more than “ awarded,” there is certainly no contradiction.
The state of the law, as it now exists, appears to be this: When a contract is sanctioned by a previous appropriation for its expenses, the lowest bidder to whom it is awarded, and by whom the security required is given, has an immediate right to demand its formal execution and delivery; where there has been no such previous appropriation, his rights are suspended, and the contract remains incomplete, until the necessary appropriation has been made, and that when the common council refuses to make the necessary appropriation the contract is wholly defeated, and its formal execution and delivery by the head of the department by whom it has been made and awarded, as acts in plain violation of his duty, would be null and void.
The next allegation on the part of the plaintiffs is, that even upon the supposition that an appropriation by the common council for the expenses of a contract is a condition precedent to its *460 final execution and delivery, the complaint, as framed, contains a sufficient averment that such an appropriation was in fact made, and consequently, that if the right of the plaintiffs to maintain this action depends upon the truth of this averment, the demurrer to the complaint ought to have been overruled, and an answer have been required.
The averment in the complaint which is relied on as sufficient, is, that before the several contracts mentioned in the complaint were awarded to the lowest bidders, “ an appropriation had been duly made by the common council of the city for cleaning the streets of the city, and that such appropriation then remained unexpended.” We have no-right to say, although such is undoubtedly the fact, that no appropriation for cleaning the streets of the city was, or could have been made by the common council since the truth of the averment, as made, is admitted by the demurrer, but it is quite certain, that a general appropriation for cleaning the streets is not such an appropriation as section 19 in the act of 1849, and section 495 in the ordinance of the common council,require to be made as a condition precedent to the final signing and execution of a contract. The appropriation that they require is not general but specific, and is necessarily limited in its amount by the nature and objects of the particular contract to which alone it refers.
We have already shown that the general words, in section 19 of the act, embrace expenditures under a contract, and they in effect forbid any such expenditure to be made even when its objects have been ordered by the common council, “ unless an appropriation shall have been previously made concerning such expense,” and these last words, we do not doubt, are equivalent in meaning to providing for such expense.
The appropriation which section 495 of the ordinance required to be made as a condition precedent to the signing or execution of a contract is, by express words, limited to “ the payment of the contract; that is limited to a sum sufficient to cover the necessary expenses of the contract.”
It seems to us, therefore, quite evident, that the appropriation which the act of 1849, and the ordinance of the common council require to be made is in all cases limited to the expenses of the contract to which alone the appropriation relates. In other words, *461 that the appropriation meant is, in all cases, of such a definite sum as, in the judgment of the common council, will be adequate to defray the necessary or probable expenses of the contract. Indeed it is for the purpose of enabling the common council to determine whether, from the terms of a contract, a larger expenditure will be necessary than in prudence or justice ought to be made, that the contract itself, and the estimates upon which it was founded, are required to be laid before it.
We hold it, therefore, to be certain that it is a specific appropriation, limited to the expenses of a contract, that is made a condition precedent to the signing or execution of any separate contract made by a street commissioner or any other head of a department. Hence it is such an appropriation that, if this action could be suffered to proceed, the plaintiffs would be bound to prove upon the trial, and it is such an appropriation that, as a material and issuable fact, constituting in part the cause of action, they were bound to aver in their complaint. The complaint contains no such averment and was, therefore, justly liable to a demurrer upon the ground that the facts which it sets forth are not sufficient to constitute a cause of action.
We have now considered and decided all the questions that were raised and argued by the able counsel for the plaintiffs, relative to the validity and construction of the ordinances (sections 494 and 495) of the common council, and relative to the powers and duties of the common council and of the street commissioner, under these ordinances and under the laws of the state, the acts of 1849 and 1853, and the necessary result from our decision of these questions is, that the judgment at Special Term, sustaining the demurrer to the complaint, must be affirmed, with costs.
It was earnestly insisted by the counsel for the plaintiffs that there was such wide difference between this case and that of Smith v. The Mayor, etc., (4 Sand. S. C. Rep. p. 220,) in which the judgment of this court was affirmed in the Court of Appeals, that they deprived the judgment so affirmed of any force or application as an authority; that the differences exist, which the counsel pointed out, cannot be denied; that they produced the effect for which he contended, we cannot admit. There are several questions that were virtually decided in Smith v. The Mayor, etc., exactly as the same questions have now been decided by ourselves and there *462 are two questions, directly bearing upon the merits of the controversy, that in the Court of Appeals were expressly decided, namely, that whether an appropriation for a contract shall or shall not be made in any given case, rests entirely in the discretion of the common council, and that, when the appropriation is withheld, no action is maintainable against the corporation. Mr. Justice Willard, in delivering the unanimous judgment of the court, said, that the 494th section of the corporation ordinances, which provides that no contract shall be signed or executed until the contract, and all the estimates relating thereto, shall have been laid before the common council, and appropriation made therefor, would be entirely senseless, “ unless the corporation have the right to refuse to enter into the contract, and to refuse the appropriation to carry it out,” and that, “ until the final action of the corporation, the proceeding is incomplete, and liable to be defeated by the refusal of that body to proceed further.”
Holding, as we have done, that the complaint in this case contains no averment that any appropriation was made by the common council for the contracts awarded by the street commissioner, we are satisfied that this decision of the Court of Appeals ought to control our own, even had we entertained opposite views upon the questions it embraces. The contracts, therefore, that were awarded to Smith, Seckel & Co., as the lowest bidders, as there was no previous appropriation for their expenses, were inchoate and incomplete, and by the refusal of the common council to make the necessary appropriation, were rendered and became wholly void. From that time there was no contract for which, or the breach of which, an action at law could be maintained against the corporation, or the specific performance of which could be decreed in equity.
Whether, upon the supposition that the complaint contains a sufficient averment that a previous appropriation had been made for the contracts in question, the corporation would be liable for the refusal of the street commissioner to sign or execute the contracts, is a question that we deem it needless to determine. If the contracts were made under a previous appropriation, the act of 1849 made it the duty of the commissioner to execute and deliver them; but upon what principle the corporation could be made liable for his violation of a personal duty imposed upon him *463 by the legislature, it is not easy to understand; as the question, however, in our opinion, is not presented by the case, we leave it undecided, we do not sit here to determine questions that we regard as hypothetical.
Judgment at Special Term affirmed with costs.