## SUPERIOR COURT.

THOMAS McSPEDON and CHARLES W. BAKER agt. THE
MAYOR, ALDERMEN and COMMONALTY of the city of New-
York.

On the 16th day of December, 1853, a resolution was passed and approved by
the common council of the city of New-York, that the clerk of the common
council be and he was thereby authorized and directed to cause to be printed
and bound, 1,500 copies of the city charter and Kent's notes, at an expense
not to exceed the amount theretofore paid therefor, the same to include all
the amendments to the date of the resolution.

Under this resolution, the clerk employed the plaintiffs to do the work, which
amounted to $3,000, and for which this action was brought.

The question was, whether this work did not come under the provisions of the act
of 1853, § 12, which requires all work to be done, and supplies to be furnished
for the corporation, involving an expenditure of more than $250, to be by con-
tract founded on sealed bids, or on proposals made in compliance with public
notice, &c. ?

*Held*, that the corporation has now power to take the entire control of its ordi-
nary daily printing, such as the printing of its minutes, ordinances, resolutions,
reports of committees, &c., without referring the subject to any executive de-
partment. Such description of work does not seem properly to fall within the
provision of section 12 of the act of 1853, which rather contemplates single
and independent transactions, involving, as a whole, a certain amount of ex-
penditure.

The work in question, however, was not of that ordinary kind above referred to.
It embraced one single job, at an exact ascertained price, and though it in-
volved "printing," it was not the ordinary printing done for the common
council. And the work involving, as it necessarily did, the expenditure of
over $250, could only be done by contract in the way prescribed in the 12th
section of the act of 1853. Complaint dismissed with costs.

*Special Term, December*, 1857.

THIS action is brought to recover three thousand dollars,
the value of work done by plaintiffs for defendants, on the
employment of the clerk of the common council, who, by
resolution of the board, passed and approved on the 16th day
of December, 1853, was directed and authorized to cause one
thousand five hundred copies of the city charter with Kent's

notes, to be printed and bound, at an expense not to exceed the amount theretofore paid for the same.

The complaint alleges that the work was done pursuant to the employment, and that the volumes were delivered to the defendants, who accepted and received the same as printed and bound, in compliance with their said resolution and direction. It then avers, that by resolution passed and approved on the 18th day of June, 1855, the defendants authorized the comptroller to pay the bill of plaintiffs, and which the clerk had certified to be correct.

The complaint also contains common counts for work and labor, goods and materials.

The answer admits both the resolutions of the 16th day of December, 1853, and 18th day of June, 1855, but alleges that they are in violation of the 12th section of the act of the 12th of April, 1853, to amend the city charter, and not binding on defendants, and that defendants are not liable for the work done under them.

There is no dispute about the facts.

The plaintiffs were originally employed to do the printing for the corporation, for one year, under a contract entered into between them and the defendants, dated the 3d day of July, 1848, in respect to which no objection is made.

This contract expired, by its own limitation, on the 3d day of July, 1849.

Before this period had arrived, the charter of 1849 was adopted, and on the 30th day of May, 1849, the ordinance organizing the departments of the municipal government under that charter, was passed.

By section 507 of that ordinance, it was declared, that until the common council should otherwise provide by ordinance, the ordinances and resolutions then in force should be applicable to the public printing; but to enable the common council to revise the same, and to make such provisions in respect thereto, as the public interest might require; the comptroller and counsel of the corporation were directed to make a report upon said ordinances to the common council, on or before the

1st day of July following, (1849,) with the draft of an ordinance adapted to carry the same into effect. No such report appears to have been made.

The plaintiff's contract having expired, they continued to do the printing under the terms and provisions of the old contract, and from that time to the present, all the printing of the common council has been sent to the plaintiffs, and regularly performed by them.

At each meeting of the common council since that period, their proceedings, and the documents and papers directed to be printed, have been furnished, printed by the plaintiffs, at the rates of charge embraced in their original contract, and have, at all times, been regularly paid by the comptroller without objection, except in the present instance.

On the 7th day of September, 1850, a resolution was passed directing the clerk of the common council to cause to be published 500 copies of Kent's charter and notes, and the amended charter of 1849, and $1,000 was appropriated to defray the expense thereof.

On the 20th day of April, 1852, 250 additional copies were, by resolution of that date, directed to be printed for the use of the city.

The act of 1853, amending the charter, went into effect on the 12th day of April of that year.

On the 16th day of December, 1853, a resolution was passed and approved, that the clerk of the common council be, and he was thereby authorized and directed to cause to be printed and bound 1,500 copies of the city charter and Kent's notes, at an expense not to exceed the amount theretofore paid therefor, the same to include all the amendments to the date of the resolution.

It was under this resolution that the clerk employed the plaintiffs to do the work for which this action is brought.

On the 26th day of December, 1853, a communication was addressed by the comptroller to the common council, and presented to the board of aldermen on the 28th of that month,

relative to the public printing. It was referred to the finance committee, but no report was made thereon.

On the 7th day of August, 1854, a preamble and resolution was presented to the board of councilmen, intended to provide for new contracts for printing, but the same were, on the 13th day of September of that year, amended by the adoption of the following resolution :

" *Resolved*, That this board (the board of councilmen) is entirely satisfied with the existing contract with Messrs. McSpedon & Baker, in printing for the legislative branch of the corporation ; and Collins, Bowne & Co., in printing for the heads of departments of this city, and accordingly recommend that the same be continued as heretofore."

On the 18th day of June, 1855, the common council, by resolution approved by the mayor on that day, directed the comptroller to pay the plaintiff's bill for the work done under the resolution of December the 16th, 1853, (the work now sued for.)

The bill had been presented February the 27th, 1855, and payment refused by the comptroller.

It is admitted that this work was not advertised for.

JOHN W. EDMONDS, *for plaintiffs.*
A. R. LAWRENCE, JR., *for defendants.*

SLOSSON, Justice. By the act to amend the charter of the city, passed April the 2d, 1849, the legislative power of the corporation is continued in the board of aldermen and board of assistants, together forming the common council, while the whole executive power is vested in the mayor, the heads of departments, and such other executive officers as should be from time to time created by law ; and it is expressly provided, that " neither the common council, nor any committee or member thereof, shall perform any executive business whatever, except such as is or shall be especially imposed on them by the law of the state, and excepting also the power to approve or reject nominations. (§§ 1 *and* 9, *act of* 1849.)

It is also provided by said act, that "all contracts to · be made or let by authority of the common council for work to be done, or supplies to be furnished, &c., shall be made by the appropriate heads of departments, under such regulations as shall be established by ordinances of the common council." (§ 23.)

It also provided, (§ 21,) "that the several executive departments, and the officers and clerks thereof, shall be subject to the legislative regulation and direction of the common council, (so far as the same shall not be inconsistent with the act,) and the duties thereof shall be performed in accordance with the charter, and laws and ordinances of the city."

These provisions are undisturbed by the "act further to amend the charter of the city," passed April the 17th, 1853, except that by this latter act a board of councilmen is substituted for that of the assistants.

By the act of 1853, it is provided, (§ 12,) "that all work to be done, and all supplies to be furnished for the corporation, involving an expenditure of more than $250, shall be by contract, founded on sealed bids, or on proposals made in compliance with public notice for the full period of ten days, and all such contracts, when given, shall be given to the lowest bidder, with adequate security. All such bids or proposals shall be opened by the heads of departments advertising for them in presence of the comptroller, and such of the parties making them as may desire to be present."

In May, 1849, the common council passed a general ordinance, organizing the departments of the municipal government, and prescribing their powers and duties.

I have not been referred to any ordinance of the corporation, nor do I find any provision in the general ordinance of May, 1849, by which work of the description of that in question is referred to, or made the subject of cognizance of any one department; on the contrary, the subject of "printing," is carefully excluded from all the enactments of the general ordinance, and the common council seems to have retained it especially under its own cognizance.

The powers and duties of the department of repairs and supplies, as defined by the act of 1849, (§ 13,) are the taking "cognizance of all repairs and supplies of and for roads and avenues, public pavements, repairs to public buildings, to fire engines, and apparatus of fire department."

By section 237, of the ordinance, the duties of the department of repairs and supplies are defined to be (following, substantially, the statute of 1849) the making and repairing the public roads, constructing and repairing public buildings, wells and pumps, supplying the public *rooms* and offices of the corporation, the court rooms, &c., *with fuel, and all other things necessary therefor, except stationery*, regulating streets, &c.; and in the department is created the bureau of public buildings, to which is referred the supplying the public rooms and offices of the corporation, the court rooms, &c., with fuel, and *all other things necessary therefor*, except stationery.

By section 243, the " chief officer of this department is re-quired to advertise for estimates, and make contracts for the several services and supplies, enumerated as falling within the province of his department, and for all *other work and supplies which may be directed* by the common council to be done or furnished, under the supervision of his department.

These provisions, it will be perceived, do not embrace work of the description of that in controversy, but it is quite manifest from the last clause of section 243, that the common council evidently considered themselves at liberty to refer to this department the subject of other work and supplies than those specially enumerated in the statute and ordinances as properly or peculiarly cognizable by it.

Title 3, of the general ordinance, regulates the subject of " contracts for supplies and work for the corporation." It requires that all supplies to be furnished, or work done for the corporation, shall be furnished or performed by contract, *except for printing*. Such contracts are to be made by the heads of departments under whose direction the supplies are to be furnished or the work performed, except contracts for stationery, which are to be made by the comptroller.

It is thus quite obvious, that neither under the act of 1849, nor under the general ordinance to carry its provisions into effect, is provision made for the performance of the peculiar kind of work for the value of which this suit is instituted.

What then are the powers of the corporation in respect to it ?

The power to order and direct, in other words to contract, for the performance of such ministerial service as is necessary to the proper and convenient performance of its appropriate duties, is a power necessarily inherent in the common council, as it is in every other similar body, and has always belonged to it, unless it is taken away by some of the provisions of the acts of 1849, 1853, or some ordinance yet in force to carry out these provisions.

That the corporation has now power to take the entire control of its ordinary daily printing, such as the printing of its minutes, ordinances, resolutions, reports of committees, &c., without referring the subject to any executive department, will not probably be disputed. Such description of work does not seem properly to fall within the provision of section 12 of the act of 1853, which rather contemplates single and independent transactions, involving, as a whole, a certain amount of expenditure.

The work in question, however, is not of that ordinary kind to which I have referred. It embraces one single job, at an exact ascertained price, and though it involves " printing," it is not the ordinary printing done for the common council. Even if it be included within the meaning of the word " printing," as used in title 3, of the general ordinance above quoted, by which that description of work is excluded from the regulations in respect to contracts, it does not follow that the common council *may lawfully* make contracts themselves in respect to it. If the provisions of section 12 of the act of 1853, are to be taken in an unlimited, imperative sense, then this work, involving, as it necessarily did, the expenditure of over $250, could only be done by contract in the way prescribed in such section.

I think it quite clear, from the provisions of the acts of 1849 and 1853, that it was the intention of the legislature wholly to separate the executive from the legislative powers of the city government, and to debar the two boards constituting the common council from the independent exercise of all executive power, at least of that description which involves the expenditure of money beyond a certain amount, always excepting such as is or may be specially imposed on them by law, and excepting the power of opposing or rejecting nominations, as provided in sections 1 and 9 of the act of 1849.

The common council, in its legislative capacity, has the power to regulate the performance of the duties of the executive departments, and probably to assign to them duties not specially enumerated in the statutes, but of the same general character; but to make contracts in respect to work to be done, or supplies furnished of any description, involving an expenditure of over $250, is not within their power or capacity to do. It is no answer to say that they have not made any regulation on the subject by ordinance.

They have the power to do it, and it was perfectly competent to them to have referred the subject, for the purpose of the contract, to the department of repairs and supplies. The right of the common council to order the work to be done, cannot be disputed, but it could only properly be done by contract, in the manner pointed out in section 12 of the act of 1853.

The object of that section was not only to confine the subject of contract making to the heads of departments, but to secure competition and cheapness in the ministerial service of the city government.

To hold that work of the description of that now in question might properly be directed to be done without contract, would be to establish a doctrine subversive in my judgment, of the provisions of section 12, and contrary to its true meaning and spirit.

I must hold, therefore, that this work was done without proper authority.

If the common council could not properly contract for it themselves by mere resolution or ordinance, they could not depute the power to their clerk, nor could they ratify his act by accepting the work.

The plaintiff's right of action, therefore, fails, and judgment must be given for the defendants.

Complaint dissmissed, with costs.