Jones, J.
It is not denied in the answer of the defendants that the common council ordered the work for whose value this action is brought; that the work was such as fell within the scope of their corporate powers to order; that it was performed; and that the compensation demanded therefor is reasonable; but the sole point made by the defendants’ counsel, in support of the defense, is that by reason of a statutory restriction the common council, although it had power to order' the work, yet it had no power to incur the expense necessary for its performance, until an appropriation covering the expense had been made.
In support of this proposition, he relies on section 28 of chapter 446 of the Laws of 1857. That section reads thus : “It shall be lawful for the common council of said city to establish such other bureaux as they may deem the public interest may require, and to assign to them, and to the departments and bureaux herein erected such duties as they may direct, not inconsistent with this act, and the duties thereof shall be performed in accordance with the charter and laws and ordinances of the city; but no expense shall be incurred by any of the departments or officers thereof, whether the object of the expenditure shall have been ordered by the common council or not, unless an appropriation shall have been previously made, covering sijch expense.
It is evident this section applies only to expenses to be incurred by a department or an officer thereof The questions then arise : Are there any expenses which may be incurred by the common council directly, without the intervention of a department; and if so, is the expense in question among them ? If both these queries are answered in the affirmative, section 28, before mentioned, is inapplicable.
Upon an examination of the act 1857 it will be seen that six executive departments are created thereby, entitled *213 respectively, Finance, Street, Croton Aqueduct Board, Almshouse, Law, and City Inspector. And in each department, (except, perhaps, the almshouse,) various bureaux are established. Each one of these departments has, by by the act, certain duties and powers confided to, and imposed on, it; and the great mass of the executive duties necessary to carry on the ordinary action of the city government is vested in them.
The matters thus confided to these several departments, together with the police and educational systems which are established and regulated by separate acts, and the fire system, which at that time was voluntary, comprised substantially all the necessary executive duties involving expenditure, to be performed in the carrying, on of the city government.
Viewing these provisions with the one requiring that all contracts to be made by authority of the common council for work to be done or supplies to be furnished, and all sales of personal property in the custody of the several departments or bureaux shall be made by the appropriate heads of departments, and also with the one requiring that no expenditure for work or supplies involving an amount for which no contract is required shall be made, except the necessity therefor be certified to by the head of the appropriate department and the expenditure be as authorized by the common council, it clearly results that the legislature, by the act of 1857, made provision for the ordinary conduct of the government. " The provisions of that statute show that the scheme of the government, thus established, was that the executive duties which ordinarily and with reasonable certainty arise in the carrying on of the government should be committed to divers departments, and that each department, as to the matters confided to it, should have the immediate supervision over them, make all the *214 contracts and order and superintend all the work required, with reference to such contracts.
It is in reference to the departments thus established by the act that the provision relied on was passed, so as to restrict them m the performance of the executive duties confided to them, and such expenditures as shall be authorized by the legislative branch of the city government. So, also, the' provisions as to making, contracts, and to a certificate of the necessity of work or supplies, apply to these departments only, and so applied, they are appropriate and reasonable provisions. For, while, on. the one hand, the department which is to have the supervision and control over the work to be done should be entrusted with the making and custody of the contract, and on the other hand, before work or supplies are ordered by the legislative board to be done or furnished by any department, the necessity therefore should be certified by such department, as it has greater means for determining such necessity than the common council.
While, on the one hand, it seems to me perfectly plain that if procuring the work and materials in question to be performed and supplied, and the supervision and control .over such performance, fall within the power and duties of any one of these departments, either as conferred by express language or as a necessary result of the scheme of government, the defense set up in this action would be proper; yet on the other hand, it is equally clear that if the procuring the work and materials in question to be performed and furnished does not fall within the cognizance of any of the departments created by the act, then the defense is bad; since, in that event, the restriction imposed by section 28 on the departments and the officers thereof would have no application, and consequently there would exist no restraint on the ordinary authority of the mayor, aldermen and commonalty, in the exercise of its *215 legislative powers, to incur expense for municipal purposes.
Upon examining the various provisions of the act of 1857, I do not find that control over the performance of such work, and furnishing such materials as those in question is given, in express terms, to any one of the departments mentioned in the act. Kor does it seem to me that such control vests in any one of the departments, as a necessary result from the scheme of government mapped out by the act.. That scheme was to provide for the performance of the ordinary executive duties and the incurring of the ordinary expenses necessary to be performed or incurred in the course of carrying on the city government.
The expense in question is, in no way, connected with the ordinary routine of the affairs of the city government; it was wholly unnecessary to incur it for the purpose of enabling any executive department to perform its duties. If the expense had not been incurred, the public interest would not have suffered one jot; all the matters in which the citizens are chiefly interested, and which are necessary for the enjoyment of safety, health and property, would still have been attended to, without the slightest interruption. The streets, public roads, wharves and piers, markets, public buildings and places, Croton water, lighting the streets, public education, police and fire departments, and courts, would all have been as fully superintended and cared for, without this expense as with it.
The expense in question was clearly one of those occa- ' sional ones, incurred for special objects, suddenly and unexpectedly arising, and, in no way, connected with the ordinary and regular administration of the affairs of the corporation.
I am aware that, by section 28, the common council is *216 authorized to establish such other bureaux as the public interest may require; but it is not imperative on them to establish a bureau for the sole and -express purpose of giving it cognizance over a special and occasional expenditure. They undoubtedly were authorized to establish such a bureau for that purpose, if they deemed it required by the public interest, but the bare fact that they did not establish such bureau is sufficient evidence that they did not deem it required by the public interest.
I have, therefore, come to the conclusion that the sole ground upon which the defendants’ counsel insists on the validity of the answer, viz. that no previous appropriation, covering the expense to be incurred, was made, is untenable; as that restriction applies only to expenditures required to be made by or through the departments created by the act of 1857, and as the expenditure in question is not by the act required to be made by or through any one of those departments.
Having come to this conclusion on the sole point raised, judgment must be given for the plaintiff.
The cases cited by the defendants’ counsel are not in conflict with these views; one of them, indeed, in a slight degree, sustains them.
The case of Bonesteel v. The Mayor, &c. (22 N. Y. Rep. 162,) merely decided that, after a contract, authorized by the common council, has been entered into, signed and executed between the corporation, on the one side, and a party agreeing to perform the w.ork, on the other, in the manner provided by the charter, the street'commissioner, unless expressly authorized by the common council, has no authority to change its provisions.
Donovan v. The Mayor, &c. (33 N. Y. Rep. 291,) only decided that, under the act of 1857, the street department had cognizance of the expenditure in- question in that case, which was for repairs on the public roads; that, con *217 seqúen tly, both sections, 28 and 38, of the act applied, and that, as the provisions of those sections were not complied with, the plaintiffs could -not recover. Altemus v. The Mayor, &c. (6 Duer, 446,) was an action brought to recover damages for the refusal, by the street commissioner, to execute and deliver to Smith, Seckel & Co. certain contracts for cleaning the streets of the city, which had been awarded to them as the lowest bidders. The defense was, that no appropriation, covering the expense of the work, had been made. The court held the defense good, on the same ground on which Donovan v. The Mayor, &c. (supra,) was decided. The People v. Stout, (23 Barb. 349,) was decided under sections 12 and 15 of the prior act of 1853. Section 12 peremptorily required that all work to be done, and all supplies to be furnished to the corporation, involving an expenditure of more than $250, should be by contract, and section 15 applied this provision to the supervisor. The work claimed for in The People v. Stout was not done by contract, and involved an expenditure of more than $250. The court consequently held, that, under those sections of the act of 1853, there was no legal claim against the county for the work done. Brady v. The Mayor, &c. (2 Bosw. 173,) and McSpedon v. The Mayor, &c. (15 How. Pr. 462,) were decided on the same ground as the case of The People v. Stout, (supra.)
Upon the facts appearing in those cases, and the law applicable thereto, the decisions were unquestionably correct. But they have no application to the case now before us for decision. The case of Bonesteel v. The Mayor, &c. (supra,) is clearly irrelevant. The cases of Donovan v. The Mayor, &c. and Altemus v. The Mayor, &c. (supra,) only hold, that where a department has cognizance over the matter for which an expenditure is to be made, then the expenditure must be made by or through such department, and the restrictive provisions apply; but it is *218 neither held nor intimated in those cases, that no expense whatever can be incurred, except by or through a department. The cases of The People v. Stout, Brady v. The Mayor, &c. and McSpedon v. The Mayor, &c. (supra,) were decided under the peculiar provisions of the act of 1853, which were repealed by the act of 1857.
I have said one of these cases somewhat sustained the conclusion at which I have arrived. It is the case of McSpedon v. The Mayor, &c. (supra.) In that case the claim was for printing “ Kent’s Notes on the City Charter,” which work the common council ordered their clerk to have done. The expense amounted to over $250. The court, although conceding that the corporation had power to take the entire control of its ordinary daily printing, yet, under the peremptory provisions of section 12 of the act of 1853, held, that if a' single item of printing ordered amounted to more than $250, the work must be done under contract. " On this ground, alone, the plaintiff was defeated in that action. Under the act of 1857 this objection cannot be urged against the claim of the present plaintiff, since that act has repealed section 12 of the act of 1853, and provides that when the work to be done, or the supplies to be furnished, involves an expenditure of more than $250, it shall be by contract, unless by a vote of three fourths of the members .elected to each board it shall be ordered otherwise. (See section 38.) And in this case it is not urged, nor even pretended, that the resolution ordering the work in question to be done without contract, received less than the number of votes required to pass it.
Judgment must therefore be given for the plaintiff, with costs.