BONESTEEL *v.* THE MAYOR, &C., OF THE CITY OF NEW YORK.

The corporation of New York city advertised for estimates and proposals for grading and forming a street, according to certain specifications. The plaintiff made a proposition referring to and adopting the specifications one of which required the stone excavated in the street to be deposited in the Hudson river in continuation of the street. Upon examination of the proposals, the contract was awarded to the plaintiff by the street commissioner, and the award confirmed by the common council: *Held,* that the plaintiff's proposal and the specification formed the only basis of any contract to be made for the work or from which any request to the plaintiff to perform work could be implied.

The street commissioner entered into a written contract with the plaintiff, departing from the specifications in two respects; first, in requiring rock to be excavated two feet below the curbstone grade instead of one foot; and, second, in substituting for the requisition that the rock excavated should be deposited in the river, a provision that it should belong to the contractor upon his furnishing an equal quantity of earth to be deposited upon the street: *Held,* that such modification of the contract was unauthorized and void.

The plaintiff performed a large amount of work, but failed to perform the contract executed by himself and by the street commissioner on behalf (as he assumed) of the corporation, in excavating the rock only to the depth of one foot instead of two, as that required; conforming in depth to the specifications. He failed to comply with the contract made by his proposal and the specifications, by appropriating the rock excavated to his own use instead of depositing it in the river: *Held,* that the plaintiff was not entitled to compensation on the ground of contract, because there was no contract which he had performed; nor upon a *quantum meruit,* because there was nothing from which to imply a request to perform the work unless either under the contract made by the proposal and specifications, or under that which the street commissioner assumed to make.

APPEAL from the Superior Court of the city of New York. Action to recover for work alleged to have been performed under a written contract. The trial was before a referee, from whose finding these facts appeared: On the 10th of June, 1851, the defendants, in common council convened, passed two resolutions; one providing that Seventieth street in said city should be regulated and graded, from the Tenth avenue to the Hudson

river (or North river), under the direction of the street com-
missioner; and the other, that a dock be built at the foot of
Seventieth street, North river, also under the direction of the
street commissioner.   At the same time, the common council
passed an ordinance to carry into effect the resolution relative to
the regulating and grading of Seventieth street, ordaining that
Seventieth street, from the Tenth avenue to the Hudson river,
should be regulated and graded, under such directions as
should be given by the street commissioner and one of the
city surveyors, and the ordinance declared that the mayor, &c.,
deemed it necessary, for the more speedy execution of the
ordinance, to cause the work specified therein to be done at
the expense of the corporation, on account of the persons,
respectively, upon whom the same might be assessed; and by
the same ordinance assessors were appointed to make a just
and equitable assessment of the expense of conforming to the
provisions of the ordinance, among the owners or occupants
of all houses and lots to be benefited thereby.

The standing and general ordinances of the corporation
require that all contracts to be entered into on the part of the
corporation must be authorized by the common council, and
when so authorized, shall be made by the department under
whose direction the work is to be performed; and that no con-
tract shall be made, signed or executed until proposals therefor
have been advertised and estimates received and decided upon;
nor shall any contract be made, signed or executed for a sum
exceeding $250, until all the proposals, estimates and contracts,
and papers relating thereto, shall have been laid before the
common council and confirmed by them.

These ordinances also provide for the issue and advertise-
ment of the proposals, and direct what the same shall contain,
namely, among other things, that estimates will be received
for the work therein specified, and the time and place when
the same will be opened.   They also prescribe the form of
the estimates to be received, and what the same shall contain,
and require a verification of the statements therein upon
oath.   The estimate is to be accompanied with the consent, in

writing, of two householders or freeholders, to the effect, that if the contract is given to the estimator, they will be bound as his sureties for its faithful performance. The ordinances also require, upon the estimates being opened, that the contracts shall be awarded by the head of the department issuing the same to the lowest bidder; and this is the decision upon the estimates which, as already stated, is required to be transmitted to the common council previous to its action in confirming or disaffirming the award. In the present case the proposals or specifications for the work authorized to be done under the ordinance referred to, were issued by the street commissioner, under date of August 14, 1852, for estimates, to be received until August 27th, 1852, at 12 o'clock noon, at which time the same were to be opened. Nicholas McDonald handed in an estimate for the work, in compliance with the ordinances and duly verified, dated August 27th, 1852, in which he states: "I refer to the estimate and specification (as forming part of this estimate), issued by the street commissioner for estimates in relation to this contract, dated August 14, 1852, and signed by him." Accompanying this estimate was a consent, dated August 26th, 1852, signed by Philip J. Bonesteel, the plaintiff's assignor, and one S. W. Trip, consenting and agreeing that, if the contract mentioned in the annexed estimate (being McDonald's estimate), should be awarded to the person making the same, they would become bound as sureties for its faithful performance. It appeared from the pleadings that the street commissioner transmitted to the common council the proposals or specifications issued by him, inviting estimates for the work: the estimates so received, including that made by McDonald, with the consent of the sureties attached and his decision thereon awarding the contract to him as the lowest bidder: and that the common council thereupon confirmed the award of the contract to McDonald. On the 21st of October, 1852, the street commissioner, on behalf of the defendants, and pursuant to the authority conferred by the confirmation of the award made by him to McDonald, entered into a written contract with McDonald for doing the work estimated for by him,

which contract, in terms, provided that he was to furnish all the materials and labor to regulate and grade Seventieth street, from Tenth avenue to Hudson river, "according to the specification."

The specification issued by the street commissioner upon which McDonald had estimated, and which he made a part of his estimate, contained this clause: "The rock is to be excavated one foot below the finishing grade, and deposited on the street and in the river in continuation of the street as the surveyor directs, and to be paid for only as excavation." In the contract or agreement dated October 21, 1852, executed between the street commissioner and McDonald, this clause was omitted and the following substituted: "The rock to be excavated two feet below the line of the curb stone grade and to be allowed for excavation only: no boulders to be measured or allowed for as rock. All the rock excavated by the contractor to belong to him, upon his furnishing at his own cost an equal quantity of earth and filling it on the street where required." Soon after October 21st, and before any work was done under the contract, McDonald assigned the same to Philip J. Bonesteel, one of his sureties, who proceeded to the execution of the work, but only carried the rock excavation to the depth of one foot below the curb stone. Bonesteel was directed, by the city surveyor having the work in charge, to deposit the rock, as excavated, in the river in continuation of Seventieth street, and he ordered him to desist from disposing of the rock elsewhere. It appeared that only a small portion of the rock was deposited in the river in continuation of the street, and that the larger portion was disposed of by the contractor (that is Bonesteel) for his own use. The complaint alleged that the work so performed by said Philip J. Bonesteel under said contract of October 21st, amounted to the sum of $14,020: that after said work had been performed, said Philip J. Bonesteel assigned his claim against the defendants to the plaintiff.

On the trial before the referee the complaint was dismissed, and a report made in favor of the defendants, on which judg-

ment was entered for the defendants, which, on appeal, was affirmed at general term, and the plaintiff appealed to this court.

The case was submitted on printed arguments.

*C. L. Monell*, for the appellant.

*Greene C. Bronson* and *Henry Sacia*, for the respondent.

DAVIES, J. The plaintiff bases his right of recovery in this action upon the contract of October 21st, 1852, and insists that that is the contract between his assignor and the defendants, without any reference to the specifications issued by the street commissioner, and which, by the terms of the contract, were made part of it. Assuming this to be so, how stands the plaintiff's case? He seeks to recover on a contract, which provided that the rock was to be excavated two feet below the line of the curbstone grade. The proof shows clearly that the rock excavation was carried to the depth of one foot only below the curbstone grade, and it follows that the contract, in this important particular, was unperformed. The entire performance, on the part of the assignor of the plaintiff, through whom he claims, is a condition precedent to the plaintiff's right of recovery, and to the maintenance of this action. (2 Kent's Com., 693; *Smith* v. *Brady*, 17 N. Y., 173; *Cunningham* v. *Jones*, 20 N. Y., 486.) On this ground, without the consideration of any other, the plaintiff cannot succeed. But it is said in his behalf, that the rock was excavated only one foot below the curbstone by the direction of the city surveyor. If this be the contract of the defendants, they, and they alone, or some one duly authorized by them, were competent to change its terms, and, in fact, make a new contract. It is not shown that the defendants ever made this modification of the contract, or in any way acquiesced in it, or gave any authority to the city surveyor to make this or any contract for them, or to change or modify in any particular that made by the street commissioner with McDonald, the performance of which was assumed by the plaintiff's assignor.

The ordinance under which the work was done, provided that the street was to be regulated and graded under such directions as should be given by the street commissioner and one of the city surveyors. The first suggestion to be made in reference to this provision is, that the ordinance would seem to contemplate joint directions by the street commissioner and the city surveyor. The present direction to excavate the rock only to the depth of one foot, would appear to have been given by the surveyor only, without the coöperation of the street commissioner. But a conclusive answer to this view of the case is, that the provision of the ordinance that the work should be done under such directions as should be given by these officers, conferred no authority upon them, or either of them, to change or modify in any essential particular the provisions of the contract made and entered into for the performance of the work. The ordinance of the defendants contemplated that the work was to be done under a written contract. The basis of that contract was the proposal or specification issued by the proper head of department, inviting estimates. When they were received and the award made to the lowest bidder, and that award confirmed by the common council, all the materials for the written contract were provided.

When the contract finally became perfected, signed and executed, no officer of the defendants had any authority to change its provisions unless expressly authorized by the common council. No such authority has been shown in this case, or any acquiescence by the defendants in the departure from the terms of the contract made by the plaintiff's assignor, with the acquiescence and pursuant to the directions of the city surveyor. Such departure had therefore no legal justification, and the plaintiff has therefore himself shown a non-performance, on his part, of what he claims was his contract with the defendants.

But it is apparent that the plaintiff does not intend to place his right to recover upon this ground. By the specification issued by the street commissioner, and which was made part of the estimate of McDonald, and which was in fact incorpo-

rated into the contract, the common council authorized the street commissioner to contract only for the excavation of the rock one foot below the grade. When, therefore, the street commissioner inserted in the contract that the rock was to be excavated two feet below the line of the curbstone grade, he assumed to make a contract without any authority whatever. He might as well have attempted to bind the defendants to pay for rock excavation ten, twenty, or any other number of feet below the grade, as for two feet. The specifications called only for excavation of rock one foot below the grade. The estimate was for the work called for by the proposal or specification, and the common council only authorized the street commissioner to contract for the work thus proposed and estimated for.

It is apparent that the plaintiff's assignor and the city surveyor both supposed that the specification and the estimate were, in fact, the contract which was to govern in this respect, and therefore the rock was only excavated to the depth of one foot below the grade, as called for by them. For the surveyor testified, on the trial of this action, that the rock was only excavated to the depth of one foot by his direction, and that such directions were given in conformity with the specifications issued by the street commissioner, and which the contractor had in his possession, and under which he was working. These specifications under which the plaintiff's assignor did the work, were then regarded as the real contract between him and the defendants. This, we think, was clearly correct, and that the modification contained in the written contract of October 21st was nugatory and void. The specification or proposal had been incorporated into the estimate, and it was before the common council when they authorized the contract to be made. It was specifically incorporated into the contract which was made, and its provisions must be held to be the controlling basis of that contract, and that the street commissioner had no authority to make any other contract with McDonald, or to change or modify any of the provisions of the proposal after the same was ratified and confirmed by the common council. It was his duty to have conformed to the directions of the

defendants. A contract, made in compliance with such directions, was binding upon them, as was said by this court in *Brady* v. *The Mayor, &c., of New York* (20 N. Y., 312). It does not require any argument to show that a contract made in violation of the requirements of the charter is null and void. It is equally clear that a contract made in conflict with the authority granted, is equally null and void. When, therefore, the street commissioner, in the contract made with McDonald, assumed to agree that all the rock excavated by the contractor should belong to him, he did what he had no authority to do, and such agreement was null and void, and of no binding force upon the defendants. He had no right or authority to change the provisions of the specifications, which, as already remarked, formed part of the estimate, and on the basis of which the common council had alone given him authority to enter into a contract. Besides, the contractor had previously agreed in this very contract to furnish all the materials and labor to regulate and grade the street, "*according to the specification.*" Now this specification provided that the rock to be excavated should be deposited on the street and in the river, in continuation of the street, as the surveyor should direct. It is believed to have been shown that we are to regard this as the true contract of the defendants with McDonald, which the plaintiff's assignor undertook to perform. It was the contract which he had in his possession, and under which he was working. It was the contract, the performance of which was a condition precedent to a right of action upon it against the defendants. It is undeniable that it has not been performed according to the directions of the city surveyor; for it clearly appears that, instead of depositing the rock excavated on the street and in the river, in continuation of the street, as provided for in the specification, he sold and disposed of the same for his own benefit. To sanction a recovery on a contract which has been thus palpably and willfully violated, would be holding out a premium to parties to disregard their solemn engagements, and would overthrow well established principles and repeated adjudications.

Courts of justice have no authority to make contracts for parties, but when their aid is invoked to enforce them, it is the first duty incumbent on them to see that the party seeking their interference has complied with the terms of the contract on his part. The present is a clear case of non-compliance, in any aspect in which it may be regarded, and on the authority of *Smith* v. *Brady* (*supra*), the plaintiff cannot maintain this action. The judgment of the Supreme Court is therefore affirmed, with costs.

The court put its judgment upon the ground that a written contract having been made, variant from that arising from the proposal and specifications, which alone was authorized by the defendant, the work could not be held to have been peformed under any contract, but was done at large; and that there was no ground for a *quantum meruit*, as there was nothing from which a request could be implied to do the work otherwise than according to the authorized or the substituted contract. All the judges concurring,

Judgment affirmed.