George Moore, Appellant, v. The Mayor, Aldermen and Commonalty of the City of New York, Respondents.

Although a municipal corporation may set up, as a defense to an action, upon a contract alleged to have been made by it, its own want of power to contract; yet, as against those innocently dealing with it, and in good faith parting with property, and expending money for its benefit, it may be estopped from availing itself of irregularities in the exercise of power conferred

Acts of the general governing body of a municipal corporation, within their general powers, which are published, represented and held out as valid, with invitations to individuals to enter into engagements and expend money and labor on the faith of them, may be assumed, by those dealing with the municipal authorities, to be as represented; and the corporation having received the fruits of contracts, entered into on the faith of such representations, will be estopped from alleging a mere irregularity, not of the substance of the power, or jurisdictional in its character, to avoid them.

General powers conferred upon a city exist in the common council, save when delegated by the charter to some other body or official, and persons dealing with the corporation, in respect to a matter within the scope of its general powers, need not go behind the doings of the common council, apparently regular, to inquire after preliminary or extrinsic irregularities.

The corporation of the city of New York has plenary power over the making, repairing, improving and paving the streets of the city, it being one of the usual and necessary powers existing in all municipal corporations. The rule, therefore, governing extraordinary or " extra municipal" powers —i. e., that they must be strictly pursued, and that the grant thereof will be deemed subject to all the terms and conditions annexed to or connected with it, does not, in all respects, apply.

Statement of case.

This power over the streets was, by the amendment to the charter of the city of 1857 (§ 2, chap. 446, Laws of 1857), vested in the common council.

The provision of said amended charter (§ 7) requiring all resolutions recommending any specific improvement involving the appropriation of public moneys, taxation, or assessment, to be published in all the newspapers employed by the corporation, is not a limitation or qualification of the general powers granted.

Accordingly *held*, that an ordinance passed by the common council, under said charter, for the improvement of a street, was within the legislative power conferred, and was not *ultra vires* and void, although passed without the prior publication required ; that while the omission would be a substantial and fatal defect, invalidating a local assessment upon property benefited, yet, as to the city, and those dealing with it, it was but an irregularity not fatal to the ordinance, or to contracts made in pursuance of it.

In 1866 the common council of said city passed an ordinance, in due form, directing the pavement of a portion of Eighth street. Prior notice of the ordinance was not published in one of the newspapers employed by the corporation. The Croton Aqueduct Board, having general power to contract for such work, when authorized by the common council, and having complied with the statute in all respects, as to advertising for proposals, etc., entered into a contract with plaintiff's assignor for the work. In an action upon the contract, *held*, that the publication prior to the passage of the ordinance was not a condition precedent to the existence of power in the common council, and the omission was a mere irregularity not affecting the jurisdiction of that body ; also, that the contractor having entered into the contract in good faith, in reliance upon the regularity of the proceedings of the common council, and the city corporation, having received the benefit of the performance, was estopped from questioning the regularity in the respect specified.

*Moore* v. *The Mayor* (4 Hun, 545), reversed.

*In re Douglas* (46 N. Y., 42) ; *In re Astor* (50 id., 363), distinguished.

(Argued March 27, 1878 ; decided April 9, 1878.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, setting aside a verdict in favor of plaintiff, and directing a new trial. (Reported below, 4 Hun, 545.)

This action was brought to recover a balance alleged to be due and unpaid upon a contract made and entered into September 15, 1866, by and between the corporation of the city of New York, by the Croton Aqueduct Board and Robert Jardine, plaintiff's assignor, for the paving of Eighth avenue, from Forty-second to Fifty-eighth streets. The con-

tract was entered into, under the terms of, and pursuant to a resolution adopted by the boards of councilmen and aldermen of the city and approved by the mayor on the 22d day of May, 1866. This resolution provided for the improvement at the expense of the city, to be reimbursed by an assessment upon the property benefited by it. The work was afterwards fully performed. Various objections were made during the progress of the trial to plaintiff's right to recover, which were overruled by the court, and the defendants duly excepted. Among them was the objection that the resolution authorizing the improvement was not published in all the newspapers shown to be employed by the corporation, as was required by law, and for that reason it, as well as all the proceedings taken under it, were claimed to be unlawful and void. The defendants gave evidence tending to prove the fact that the publication was not made in the Leader, which was one of the newspapers then employed by the corporation, pursuant to section 2 of chapter 227 of the Laws of 1863, and of which notice was given in that year to the board of aldermen. Defendants also alleged, and gave evidence tending to show an accounting and settlement in May, 1868, when the defendants retained a sum to pay certain claims filed against the contract; and a further sum, which was retained pursuant to a clause in the contract as security for the good condition of the pavement constructed; the balance due upon the contract was paid, and a release executed to the city in full of all claims and demands, "less claims filed, $7,791.17; security, $1,120.50 = $8,911.67."

Plaintiff sought to recover a portion of the sum retained for claims filed, which he claimed was unlawfully retained. Further facts appear in the opinion.

*Jno. E. Parsons*, for appellant. It was not necessary for plaintiff to show the regularity of the appointment of the inspectors and water purveyors. (*People* v. *Collins*, 7 J. R., 549; *People* v. *Bartlett*, 6 Wend., 422; *People* v. *White*, 24 id., 525; *People* v. *Cook*, 4 Seld., 89.) A corporation may

ratify the unauthorized acts and contracts of its agents or officers which are within its corporate powers. (Dil. on Mun. Corp., § 385; *Peterson* v. *Mayor, etc.*, 17 N. Y., 449, 453; *Hodges* v. *Buffalo*, 2 Den., 110; *People* v. *Flagg*, 17 N. Y., 584; *Brady* v. *Mayor, etc.*, 20 id., 312.) As the defect claimed here does not directly relate to or bear upon the contract its omission did not invalidate it. (*Sprague* v. *Birdsall*, 2 Cow., 419; *People* v. *Laimbeer*, 5 Den., 9; *McKeen* v. *Delancy's Lessee*, 5 Cranch [S. C.], 22; 1 S. & R., 106.) The corporation should be held responsible for its own negligence when seeking to impose liability upon third persons. (*Sharp* v. *Spier*, 4 Hill, 76; *In re Douglass*, 46 N. Y., 42; *Stetson* v. *Kempton*, 13 Mass., 272; Smith on Statutes, 789.) There may be a waiver of a requirement, or a ratification by a corporation, though made by officers or agents without original authority, to dispense with such requirement. (*Brady* v. *The Mayor, etc., of New York*, 20 N. Y., 312; *Bonestel* v. *Same*, 22 id., 162; *Harlem Gas Co.* v. *Same*, 33 id., 309; *Smith* v. *Same*, 21 How., 1; *Mott* v. *Hicks*, 1 Cowen, 513.) Plaintiff was entitled to recover under chapter 580, Laws of 1872. (*In re Delancy*, 52 N. Y., 80; *Astor* v. *Mayor, etc.*, 62 id., 580; *Tn. Duanesburgh* v. *Jenkins*, 57 id., 177, 192; *Lennon* v. *Mayor, etc.*, 55 id., 361 ; *Butler* v. *Palmer*, 1 Hill, 324; *People* v. *Tibbets*, 4 Cow., 358.) Where there is neither original authority, nor subsequent ratification, there may be implied liability on the part of a municipal corporation, when it has received a benefit, or collected money which inures to the advantage of the person claiming liability. (*Nelson* v. *The Mayor, etc.*, 63 N. Y., 535; Dillon on Mun. Corp., §§ 383, 750; 2 Kent's Com., 291; *Bk. of Columbia* v. *Patterson*, 7 Cranch, 299; *Perkins* v. *Washington Ins. Co.*, 4 Cow., 645; *Dunn* v. *Rector, etc.*, 14 J. R., 118; *Bk. of U. S.* v. *Dandridge*, 12 Wheat., 64; *Danforth* v. *Schoharie Road*, 12 J. R., 227; *Mott* v. *Hicks*, 1 Cowen, 513.)

*D. J. Dean*, for respondent. The ordinance authorizing the work, not having been published as required by law, no

valid contract for the work could be made. (Laws of 1857, chap. 446, § 7; *Litchfield* v. *Vernon*, 41 N. Y., 132; *In re Trustees*, 31 id., 529; *Sharp* v. *Spier*, 4 Hill, 83; *People* v. *Mayor*, 2 id., 9; *In re Mt. Morris*, 2 id., 14; *In re Douglass*, 46 N. Y., 42; *In re Astor*, 50 id., 363.) The contract being invalid the law will not imply and impose upon defendant a liability to pay the contract-price, because the work had been furnished and used for a public purpose. (Dil. on Mun. Corp., §§ 371, 372; *Head* v. *Ins. Co.*, 2 Cranch, 127; *White* v. *New Orleans*, 15 La. An., 667; *Dey* v. *Jersey City*, 19 N. J. Eq., 412; *Baltimore* v. *Reynolds*, 20 Md., 1; *Butler* v. *Charleston*, 7 Gray, 12; *Bladen* v. *Philadelphia*, 60 Pa. St., 464; *Bonesteel* v. *Mayor*, 22 N. Y., 162.) Unauthorized contracts are void, and a corporation may successfully plead excess of power by its officers against claims founded upon such contracts. (*Albany* v. *Cunliff*, 2 Comst., 165; *Halstead* v. *Mayor*, 3 id., 430; *Martin* v. *Mayor*, 1 Hill, 543; *Boom* v. *Utica*, 2 Barb., 104; *Cornel* v. *Guilford*, 1 Den., 510; *Appleby* v. *Mayor*, 15 How., 428; Dil. on Mun. Corp., § 381.) Plaintiff was not entitled to recover on a *quantum meruit*. (*McSpedon* v. *Mayor*, 7 Bosw., 601; *Brady* v. *Mayor, etc.*, 2 id., 173; *Bonesteel* v. *Mayor, etc.*, 22 N. Y., 170.) Plaintiff was obliged to produce the certificate of the water purveyor of the completion of his work as a condition precedent to payment. (*Thomas* v. *Flurry*, 26 N. Y., 173; *Bowery Nat. Bk.* v. *Mayor, etc.*, 2 Sup. C. R., 526.)

ALLEN, J. The objection to a recovery in this action mainly relied upon is, that the contract for the performance of the work mentioned in the complaint is void for want of legal authority in the "Croton Aqueduct Board" to make the same in behalf of the city. The authority of the board to let the contract is challenged for an alleged informality or irregularity in the action of the common council in passing the ordinance for the pavement of Eighth avenue. It is not claimed that the contract was not formally and regu-

larly made with the lowest bidder, after advertising for proposals, and by the proper board or body of officials duly
authorized by the common council. It was made pursuant
to the amended charter of 1857. (S. L., chap. 446, §§ 24,
38.) A slight departure in the contract from the ordinance,
by including certain work and materials not authorized by
the ordinance, was cured by statute. (Laws of 1868, p.
379.)

The defect in the proceedings of the common council
which, it is claimed, invalidates and absolutely annuls their
action for all purposes, and as to all persons, is the omission
of that body to publish the proposed ordinance for ten days,
before its adoption, in "The New York Leader," which is
now proved to have been at that time one of the many newspapers employed by the corporation, as required by section
7 of the charter of 1857 (*supra*). The objection is very
technical and without merits, unless it has a substantial
foundation in the statute. The corporation of the city of
New York has plenary power over the making, repairing,
improving and paving the streets of the city. That power
was conferred by the Dongan charter and confirmed by the
Montgomerie charter, and still exists unimpaired. It is
exercised by and through the common council, in whom is
vested, by section 2 of the charter of 1857, the legislative
power of the city. The ordinance for the improvement of
the Eighth avenue, one of the streets of the city, was within
the legislative power conferred upon the common council,
and was not, therefore, *ultra vires*. It was within the general scope of the powers conferred by section 2 of the act
of 1857. The power is one of the usual and necessary
powers existing in all municipal corporations, and not one
of those extraordinary powers called by Judge DILLON
" extra municipal," which must be strictly pursued, and the
grant of which will be deemed subject to all the terms and
conditions annexed to or connected with it. The provision
of the statute upon which the objection rests is not a part of
the section conferring general powers of legislation on the

common council, but is found later on in the statute, and in
a section mainly, if not entirely, directory, regulating the
formal mode of procedure, the sittings of the two branches
of the council, the keeping of the journals of their proceed-
ings, etc. It is not a limitation or qualification of the gen-
eral powers granted. There is no enactment in or out of
the section (§ 7) that a failure, either literally or substan-
tially, to comply with any of the regulations therein pre-
scribed shall vitiate the proceedings, or that an ordinance
for any of the purposes mentioned, passed without the prior
publication called for, shall be void.

The objection is not to any informality or irregularity in
the votes or the proceedings of the common council, but to
the omission of an act *in pais*, outside of the council cham-
ber, and of which no record would appear in the journals of
that body. The defect could not and did not appear in the
journals of the common council, and we have very good rea-
son to know judicially that it was a work of much labor,
requiring a careful study of the laws passed by the State
Legislature from year to year, and official action and non-
action thereunder by learned counsel and astute judges, to
determine that The New York Leader was one of the papers
in which the ordinance should have been published in
advance of its passage. It was only settled by the judgment
of this court. No contractor or private citizen, even if they
could have had access to all the evidence bearing upon the
question, could have certainly known whether it was or
was not one of the newspapers employed by the corporation.
The common council may be supposed to have known, and
were bound to know, which were the corporation news-
papers, but not so one dealing with the city and having no
means of ascertaining. It would be a hardship if one, who
has entered into a contract upon invitation with a board
competent to contract for work authorized by an ordinance
regularly passed with all the formalities required by law and
apparently valid, and without any patent or discernable
latent defect in any manner affecting its regularity or valid-

ity, had in good faith performed his contract at great cost, and whose work, having been accepted by the city, had gone into use for public purposes, should be held to have forfeited all right to compensation upon the technical ground suggested. The public and all dealing with the corporate authorities have the right to assume that an ordinance upon a subject of ordinary municipal legislation, passed with all the forms of law, and valid so far as the journals of the common council disclose, is a valid law and not void by reason of some latent and undiscoverable defect, unknown to all save to the common council, who publish the ordinance as a valid law of the city, and invite the public to respect it and act upon the faith of it.

Individuals dealing with municipal authorities may, without incurring extra hazard, assume that acts of the general governing body within their general powers, which are published, represented and held out as valid with invitations to individuals to enter into engagements and expend money and labor on the faith of them, are in fact as represented, and to deal upon the faith of such assumption, and the corporation having received the fruits of engagements entered into on the faith of such representations should be estopped from alleging a mere irregularity to avoid them.

It is indispensable to any government, State or municipal, that full faith and credit be given to the acts of the governing body, and that individuals having occasion to deal with agents of the government should be permitted to regard the acts of the government valid in the absence of any apparent defect, either in the power or the manner of its exercise. If the act is not within the general powers of the municipality or its governing body, the case would be different, for every one dealing with the agents of the municipality is bound to know the limits of that power. It is not allowable, however, for a municipal corporation to perpetrate a fraud upon those contracting with it upon the faith of its laws and ordinances, apparently valid and represented as such, by repudiating them upon the allegation of some technical and

formal irregularity in their adoption, an omission of some collateral act, some formality prescribed by statute, not of the substance of the power or jurisdictional in its character.

We have authority for saying that defenses, based upon mere irregularities in the making of contracts by municipal corporations, or non-compliance with preliminary require-ments not going to the question of power, are not favored by the courts, even in respect to obligations foreign to the purposes of the corporation and extraordinary in their nature, the power to incur which must be strictly pursued, as an issue of bonds in aid of railroads and kindred objects. (*Knox County* v. *Aspinwall*, 21 How., 539; *Moran* v. *Commissioners*,. 2 Black, 722; *Bissell* v. *City of Jeffersonville*, 24 How., 287; *Marsh* v. *Fulton County*, 10 Wall., 676.) The Croton Aqueduct Board had general power to contract for the pav-ing of the streets whenever the paving was authorized by the common council of the city, and as the contracting body were the agents of the city acting under a special authority,. it was the business of those contracting with them to see that the conditions upon which their power depended were fulfilled by them. As a general rule, one dealing with an agent must see that the conditions necessary to the exercise of the power exist.

The contracting board did comply with the statute, and. in all respects; but as well that board, as those propos-ing for the work, had a right to assume that the preliminary notice of the proceedings of the common council had been published prior to the adoption of the ordinance,. from the fact that the ordinance had been regularly passed. and the work ordered by the governing body of the city, hav-ing general power in the premises. The maxim *omnia præ-sumuntur solemniter esse pacta* would apply in all its force. The unauthorized acts of city authorities — that is, those *ultra vires*, in the sense that they are not within the general powers conferred, are not binding on the corporation, and corporations are not estopped by acts of corporate agents strictly *ultra vires*. A city may set up as a defense its own.

want of power under its charter to contract, but in favor of *bona fide* holders of its negotiable securities, and by parity of reasoning those innocently dealing with it, and in good faith parting with property and expending money for its benefit, it may be estopped to avail itself of irregularities in the exercise of power conferred. It may show that, under no circumstances, could the corporation lawfully make a contract of the character in question. (Dillon on Mun. Corp., §§ 381, 749, 766.) General powers conferred upon a city government exist in the common council, as the general representative and legislative body, except as delegated by the charter to some other body, or devolved upon some official, and persons dealing with corporations in respect to a matter within the general scope of the powers of the city government need not go behind the doings of the common council, apparently regular, to inquire after preliminary or extrinsic irregularities.

While courts have been vigilant in their scrutiny of corporate action, and have zealously striven to keep corporations and their agents within the limits of granted powers, they have not favored defenses to honest demands, based upon mere irregularities and informalities.

This is a case within the reason of the exception suggested by Judge DILLON in his treatise (*supra*, section 419), to the general rule that the unauthorized representation of corporate agents, that they have power to do an act, is not binding upon the corporation; that the corporation, acting by and through its common council, the only way in which it can act, is estopped from alleging that the ordinance was not regularly and duly passed. That body represented it as duly passed, and it, and it alone, had the means of knowing whether the preliminary steps had been taken, and the plaintiff's assignor, and others in the same position, had not the same means of knowledge, and therefore had a right, and were compelled to rely upon the representations implied by the passage of the ordinance, that the necessary publications had been made.

When there has been a *bona fide* performance of a contract, of which the city has had the benefit, there is a strong equity in favor of the contractor seeking his pay, entitling him to the benefit of a ratification even of a void contract upon slight evidence, if the ratifying body has general power over the subject of the contract, and of an estoppel when an estoppel fairly results from the conduct of the general agents of the city. (Dillon *ut supra*, § 385 and note 3, and § 386.) Judge Denio, in *Brady* v. *The Mayor*, etc. (20 N. Y., 312), said : " It is not necessary to deny that one who has *bona fide* performed labor under a contract which is void from a failure to comply with the statutes may maintain an action against the city to recover a *quantum meruit*, when the work has been accepted by the city, and has gone into use for public purposes." It is not intended, by quoting this language, to intimate that a contract expressly forbidden by statute, or clearly *ultra vires*, can be ratified by the corporate authorities.

In *Bonesteel* v. *The Mayor*, etc. (22 N. Y., 162), there was no performance of the contract, and therefore no implied promise to pay.

But, waiving further discussion of the question of estoppel, which, I think, is established, or of ratification, I am of opinion that the ordinance was a valid ordinance, regularly passed, so as fully to authorize the making of the contract by the Croton board. The publication prior to the passage of the ordinance was not a condition precedent to the existence of power in the common council. It was not jurisdictional, and the omission of the publication in one paper out of several, or the publication in one or more of the papers for a less time than required by law, or a defective publication in some of the papers would be mere irregularities not affecting the jurisdiction of the common council. It is true that this court has held that the omission to publish an ordinance of this character for ten days before its passage, in all the papers employed by the corporation (and the non-publication in the New York Leader was the omission complained

of in all the cases in which the question has been considered) did invalidate and avoid the local assessments upon property benefited by the work. (*In re Douglass*, 46 N. Y., 42; *In re Astor*, 50 id., 363.)

The *Douglass Case* has since been followed, and that case gives the rule which governs in all cases within the doctrine there adjudged. Ch. J. Church, in *Astor's Case*, states, concisely and precisely, what was decided. He says : "We held, *In re Douglass*, that the provisions of this act requiring publication operated as a limitation upon the power of the common council to make assessments upon the citizens of the city, and that a failure to comply with the act in this respect rendered assessments void."

In giving this judgment the court merely applied in the protection of private property the doctrine of *Sharp* v. *Spier* (4 Hill, 83), and the numerous cases following in its wake, and declared the assessments void. It was not held that the ordinance was void, so that work done under it could not be paid for, but in the application of the general rule that in all statutory proceedings by which the citizen may be deprived of his property, the statute must be strictly pursued in everything essential to protect the citizen in his property rights, and that the publication of this notice was intended for the benefit of those whose property might be burdened by the improvement, and that, therefore, as against the property-owner, it could not be dispensed with. But it does not follow that because by reason of the omission of an act, not affecting the general jurisdiction of the common council and the city government, designed for the protection of the owners of property benefited by the improvement, a local assessment could not be laid, the entire cost of the work must be borne by the contractor, a single individual—that is, that the unfortunate contractor must stand between the city and its careless government. If the learned counsel for the corporation is right in his contention, he may not only defeat this action, but recover back for the city all that has been paid by the city upon this contract, and the

very many other contracts that have been made and performed under ordinances affected by the same irregularity. The corporation may do this notwithstanding an assessment has been levied and collected for the full cost of the work. The assessment for this work was confirmed, and may have been collected to the last dollar. There is nothing to show that it has not been collected, and that the city will not be the gainer to the amount of the whole cost and assessment of nearly $70,000, if they can cast the burden upon the contractor. That the provision, which is held to be a shield for the protection of one class of citizens, is turned into a sword to attack and rob a single individual citizen. If this should be so, it would not affect the principle, but it tends to show the gross injustice of this defense. But to return to the logic of the decisions before referred to. They rest upon the well-defined principle before suggested, but they do not require that the same effect should be given to the non-publication in the Leader where private property is not to be affected by the procedure. The citizen whose property was touched might insist upon it as a substantial and fatal defect, for the technical but sound reason that the statute intended for his protection had not been observed, but the corporation cannot take the same ground and claim immunity from its obligations by reason of an irregularity of its common council not affecting its jurisdiction, and of which the other party to the obligation had no knowledge. This would be a perversion of the rule asserted in the cases cited.

The omission complained of was, *quoad* the city and those dealing with it, but an irregularity not fatal to the ordinance, or contracts made in pursuance of it. A statute may well have a different interpretation, or rather a more stringent operation and effect in some cases than in others. Standing between the citizen whose property was threatened, and the city, the court could well hold that the law was mandatory in favor of the citizen, and that in order to a local assessment it must be strictly observed, but as between him who has *bona fide* performed the work authorized to be done, and the city,

who has accepted and brought it into use, but refuses to pay
for it, it may consistently say that it is no shield and pro-
tection to the city, but *quoad* these parties, and the litigation
in hand, it is directory merely, and want of a literal observ-
ance of it in all respects, not fatal to the ordinance or con-
tracts made in pursuance of it.  While a local assessment
may be void, a contract fully performed, made in pursuance
of the same ordinance may be valid, but the converse could
not be.

If the ordinance did not legally authorize a contract, an
assessment would be necessarily void.  The other objections
to a recovery by the plaintiff are clearly untenable.  The por-
tion of the claim now sued for was excepted from the release
of Mr. Darling.  It was not paid to Mr. Darling or to Mr.
Jardine, the contractor, but was reserved to meet the claims
against the contractor, notice of which had been filed with
the finance department of the city.  There is no evidence
that there are claims against the contractor remaining unpaid
at this time, and the corporation do not claim the right to
retain the amount to meet any existing claims.  The excep-
tion of the demand in suit from the operation of the release
is not in technical form, as it has been evidently inserted at
the end of a printed blank prepared for the signature of the
contractor.  But the meaning and intent of the parties is
very obvious, and the exception is as formal and regular as
is the release.  The certificate and approval of the water pur-
veyor is sufficient in substance, although not very formal.
He approves the last of the certificates, which, taken together,
show that the contract has been complied with.  This mere
want of form does not vitiate the certificate.  It is a sub-
stantial compliance with the condition of the contract, and
the defendant cannot take advantage of mere want of form
in the acts of its own agents, if the requirements of the
statute and of the contract have been substantially complied
with.  The contractor earned his money when he performed
his contract and the city accepted the work, and ought not
to be compelled to earn it a second time in compelling the

defendants' agents to perform their clerical and formal duties in the most approved and artistic style.

The order granting a new trial should be reversed, and judgment given on the verdict.

All concur, except FOLGER, J., not voting; MILLER, J., concurs in result; EARL, J., concurs in result on ground of estoppel.

Order reversed.