JENNIE T. B. BECKER, as Executrix of JAMES BRADY, Deceased, Respondent, v. THE CITY OF NEW YORK, Appellant.

NEW YORK CITY — STREET IMPROVEMENT — WHEN CITY NOT LIABLE FOR DAMAGES CAUSED BY MISTAKES OF CITY SURVEYOR IN FIXING GRADES. Under a street improvement contract executed by the commissioner of public works of the city of New York pursuant to an ordinance directing the regulating and grading of an avenue, which contract provided that " a city surveyor will be employed by the parties of the first part to see that the work is completed in conformity to the profile and to ascertain and certify the quantity of work done. Said surveyor, at the request of the contractor, will be directed to designate and fix grades for his guidance during the progress of the work without charge, provided that the said parties of the first part shall not be liable for any delay or for any errors of said surveyor in giving such grades and said surveyor shall be considered as the agent of the contractor so far as giving such grades is concerned and not the agent of the city of New York," to which contract a profile was attached — the contractor is not entitled to recover for losses suffered in the grading of the avenue by reason of the mistakes of the city surveyor in grades given by him although the contractor did not request that the grades be furnished him, and upon discovering the mistakes notified the superintendent of street improvement of them and proceeded only after his positive direction to conform the avenue to the grades given, for the reason that the duty of the contractor was to follow no grade except such as was in accordance with the profile, and the direction of such officer was a material modification of this requirement which he had no power to make in the absence of an express authorization by the proper authorities; and, therefore, the contractor proceeded at his peril to obey such direction, and in not relying upon the profile alone.

*Becker* v. *City of New York,* 77 App. Div. 635, modified.

(Argued October 19, 1903; decided November 24, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered Janu-

ary 10, 1903, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George L. Rives*, Corporation Counsel (*Theodore Connoly* and *Terence Farley* of counsel), for appellant. The plaintiff is not entitled to recover for losses suffered on account of mistakes in grades furnished the contractor by the city surveyor. (*Cluff* v. *Day*, 141 N. Y. 580; *Roberts & Co.* v. *Buckley*, 145 N. Y. 215; *Matter of Laudy*, 161 N. Y. 429; *Wickham* v. *L. V. R. R. Co.*, 85 App. Div. 182; *O'Brien* v. *Mayor, etc.*, 139 N. Y. 576.)

*L. Laflin Kellogg* and *Alfred C. Petté* for respondent. The plaintiff was entitled to recover the sum of $9,724, the increased cost of the work occasioned by the errors and mistakes in the lines and grades given by the engineer in charge. (L. 1882, ch. 410; *Mulholland* v. *Mayor, etc.*, 113 N. Y. 631; *Horgan* v. *Mayor, etc.*, 160 N. Y. 516.)

HAIGHT, J. The plaintiff's testator was the assignee of the claim of one Benjamin J. Carr, Jr., and brings this action to recover the damages suffered by him arising out of his contract with the defendant for regulating and grading Claremont avenue from One Hundred and Twenty-second street to One Hundred and Twenty-seventh street in the city of New York. In our review of the case it becomes necessary to discuss but one of the various claims in controversy between the parties, and that arises out of the second count in the complaint, in which damages are asked for the errors of the city surveyor in giving an incorrect grade of the street, by which the contractor was misled and excavated a greater amount of rock than was required by the contract and was then compelled to fill in the excavation so as to conform the grade to the specifications.

This case has been once previously considered in this court (170 N. Y. 219). The judgment was then reversed, upon

grounds not material to be now considered, but in the opinion then written it was stated that there could be no recovery for damages claimed by reason of the errors in the grade given by the surveyor. It is now claimed that upon the retrial further evidence was presented as to this claim, upon which the trial court, under the objection and exception of the defendant, submitted the same to the jury and a verdict has been found thereon for the plaintiff amounting to the sum of $8,520. The new evidence upon which the plaintiff relies for the purpose of establishing this claim is found in the testimony of the contractor, and is to the effect that he saw Mr. Dean, the superintendent of street improvements, after the work had been in progress from fifteen to seventeen months, in his carriage at One Hundred and Twenty-second street and Claremont avenue, and then requested him to go and look at the discrepancy in the grade lines; that Dean replied to the effect that he could do nothing in the matter; that his letter to him was specific, and that he would have to follow the grades and lines as given by Mr. Slator, the engineer in charge. The letter referred to had been written on the 18th of July, 1890, six or eight months before, and in that letter there appears a similar statement to the effect that he would have to follow the lines and grades given by the engineer in charge. This letter was written in answer to a letter by the contractor calling his attention to the error in the lines of the street as given by the surveyor before any error in the grade had been discovered. This letter was considered by the court on the former review, and we shall not discuss it further. We are thus brought to the consideration of the question as to whether the direction given by the superintendent of street improvements to follow the grade lines given by the engineer in charge justifies a recovery.

The contract, so far as material upon this branch of the case, provides that "a city surveyor will be employed by the parties of the first part to see that the work is completed in conformity to the profile, and to ascertain and certify the quantity of work done. Said surveyor, at the request of the

contractor, will be directed to designate and fix grades for his guidance during the progress of the work without charge, provided that the said parties of the first part shall not be liable for any delay or for any errors of said surveyor in giving such grades, and said surveyor shall be considered as the agent of the contractor so far as giving such grades is concerned and not the agent of the City of New York." A profile was attached to the contract, and the contract was executed by the commissioner of public works of the city and by the contractor, pursuant to an ordinance of the mayor, aldermen and commonalty of the city of New York, adopted on the 23d day of July, 1889, in which the regulating and grading of this avenue was directed and sealed estimates were invited from bidders according to the plans and specifications which were attached to and made a part of the contract. As we understand this provision of the contract it became the duty of the contractor to grade the street in accordance with the profile. He could employ his own surveyor, or if he asked the city surveyor would give him the grades, but upon the understanding that the city should not be liable for the errors of the surveyor, and that in giving such grades he should be considered to be the agent of the contractor. The evidence tends to show that the city surveyor did set stakes and mark the grades thereon and that the grades so marked were erroneous and that the contractor in excavating to the depth required by the marks upon the stakes excavated to a greater depth than required, which had to be refilled and that he suffered damages in consequence thereof.

The contractor now claims that he was compelled to perform the work in accordance with the grades given by the surveyor, by the superintendent of street improvements, who, after the contractor had called his attention to errors in the grade, directed him to follow the lines and grades as given by the surveyor. As we have seen from the contract, the contractor was required to conform the street to the profile. He was not obliged to conform the grade to that given by the city surveyor, but could have ascertained the same through

any other surveyor, and if he saw fit to request the city sur-
veyor to give him the grades he made him his own agent and
agreed that the city should not be liable for his errors.   The
direction of the superintendent of street improvements, to
the contractor to proceed and conform the street to the grades
given by the city surveyor, is inconsistent with these pro-
visions of the contract and is a material variation of its
terms.   The question thus arises as to whether this officer
had the power to modify or change the contract in this
regard.   He was a subordinate officer in the department
of public works.   His duties required him to watch the
work of contractors and see that their work was done in
accordance with the requirements of the contract and upon
the completion of the work to give a certificate.   We think
he had no power to change or modify the contract, or to
relieve the contractor from the provisions in question.   This
question was disposed of in this court, as early as the case of
*Bonesteel* v. *Mayor, etc., of N. Y.* (22 N. Y. 162).   In that case
the common council of the city of New York had passed an
ordinance directing the regulating and grading of Seventieth
street from Tenth avenue to the Hudson river, the work to be
performed under the directions of the street commissioner
and the city surveyor.   The contract provided that the rock
was to be excavated two feet below the line of the curbstone
grade.   The contractor excavated the rock only one foot below
such grade and claimed that this was done by the direction of
the city surveyor.   DAVIES, J., in delivering the opinion of
the court, says with reference to this contention that " the
ordinance under which the work was done provided that the
street was to be regulated and graded under such direc-
tions as should be given by the street commissioner and one
of the city surveyors.   The first suggestion to be made in
reference to this provision is, that the ordinance would seem
to contemplate joint directions by the street commissioner
and the city surveyor.   The direction to excavate the rock
only to the depth of one foot, would appear to have been
given by the surveyor only, without the coöperation of the

street commissioner. But a conclusive answer to this view of the case is, that the provision of the ordinance that the work should be done under such directions as should be given by these officers, conferred no authority upon them, or either of them, to change or modify in any essential particular the provisions of the contract made and entered into for the performance of the work. The ordinance of the defendants contemplated that the work was to be done under a written contract. The basis of that contract was the proposal or specification issued by the proper head of department, inviting estimates. When they were received and the award made to the lowest bidder, and that award confirmed by the common council, all the materials for the written contract were provided. When the contract finally became perfected, signed and executed, no officer of the defendants had any authority to change its provisions unless expressly authorized by the common council. No such authority has been shown in this case, or any acquiescence by the defendants in the departure from the terms of the contract made by the plaintiff's assignor with the acquiescence and pursuant to the directions of the city surveyor. Such departure had, therefore, no legal justification, and the plaintiff has, therefore, himself shown a non-performance on his part of what he claims was his contract with the defendants." Dillon in his work upon Municipal Corporations, at section 451 (third edition), says with reference to the variance or modification of a contract, that " where the contract is made by ordinance in the statutory mode it can only be repealed or annulled in the same manner." In *City of Terre Haute* v. *Lake* (43 Ind. 480) it was held that the common council of a city can only contract by an order, resolution or ordinance passed in the manner required by statute, and when thus made it can be repealed or annulled only by the vote of the common council. (See, also, *Glacius* v. *Black*, 50 N. Y. 145; *Fitzgerald* v. *Moran*, 141 N. Y. 419; *Woodruff* v. *Roch. & Pittsburgh R. R. Co.*, 108 N. Y. 39; *Hague* v. *City of Philadelphia*, 48 Pa. St. 527, and *North. Pac. L. & M. Co.* v. *East Portland*, 14 Oregon, 3.)

The judgment should be reversed and a new trial ordered, with costs to abide the event, unless the plaintiff within twenty days stipulates that the judgment may be reduced in the sum of $8,520, and if such stipulation is given, then the judgment be modified accordingly, and as so modified affirmed, without costs of this appeal to either party.

MARTIN, J. (dissenting).    The plaintiff's testator was the assignee of a claim of one Benjamin J. Carr, Junior, arising under a contract made between him and the city of New York in 1889, for regulating and grading Claremont avenue from 122d street to 127th street.    This action has been several times tried and was before this court on a former appeal.    Although numerous questions were presented upon the argument and by the briefs of counsel, yet, in view of our previous decision in this case, but a single question is presented which we deem it necessary to consider at this time.    The question we shall consider arises under the second cause of action stated in the complaint, by which the plaintiff seeks to recover the damages sustained by the original contractor by reason of his having been required by the defendant to perform a large amount of unnecessary work in the fulfillment of his contract.

The contention of the plaintiff is that this loss was occasioned by the action of the defendant's officers and employees in giving the contractor an incorrect grade of the street and then compelling him to conform the street to the grade as thus given, although he at the time insisted that it was wrong and objected to it as inaccurate.    The provision of the contract relied upon by the defendant to exempt it from such liability in effect provides that a city surveyor, at the request of the contractor, will be directed to designate and fix grades for his guidance during the progress of the work without charge, provided that the city shall not be liable for any delay or any errors of such surveyor in giving such grades, and the surveyor shall be considered as the agent of the contractor so far as the giving of such grade is concerned, and not as the agent of the city.

It is quite evident under this provision of the contract that if the contractor requested the city surveyor to designate and fix the grades the latter would be regarded as his agent, and the city would not be liable for any delays or errors of such surveyor. So, also, if, without objection, the contractor used the grades thus given, thereby acquiescing in and ratifying the surveyor's action, and accepting him as his agent within the terms of the contract, the city would not be liable, and we so held in the former decision of this case (170 N. Y. 219). But we also held that the contractor was entitled to recover for losses suffered in grading this street caused by the errors of the city surveyor in fixing the center line, where it was done by the city without the request or acquiescence of the contractor, and the contractor, afterwards distrusting its accuracy, sought to have it properly corrected, but failed, and finally proceeded with the work on that line as he was directed to do by the superintendent of streets.

When our former decision was rendered there was evidence tending to show that that was the situation so far as the center line established by the city surveyor was concerned, and it was held that the loss sustained by the contractor, due to the inaccurate line, was a proper charge against the defendant and might be recovered. It was then said : " It cannot be reasonably said that under this state of facts the contractor had, by acquiescence, made the city surveyor his agent. On the contrary, the contractor was reasonably alert to discover the correct center line, and followed the one furnished him, which he had been advised by his own surveyor was inaccurate, only when the superintendent of street improvements, after being fully advised as to all the facts, ordered him to do so." As the evidence then stood, the loss sustained by the contractor on account of the mistakes as to the grades other than as to the center line, was not recoverable, as there was then no sufficient evidence to show that the contractor had, after objection by him, proceeded with the work in accordance with such grades under compulsion or the positive direction of the city authorities. Upon the last trial, however, the evidence in that

respect was changed, as the contractor then not only testified that he did not request the city surveyor to give him either stakes, lines or grades, but also that after discovering the inaccuracy of the grade furnished by the city surveyor in other respects, as well as to the center line, he saw the superintendent of street improvements, called his attention to it and requested him to look at the discrepancies in those respects and to the defects in the lines and grade. To this request the superintendent replied that he could do nothing in the matter, but that the letter he wrote, in which he said, "you will proceed with your work * * * in accordance with the grade lines and stakes as given by Mr. Slator, surveyor in charge," was specific, and that the plaintiff would have to follow the grades and lines as given by the engineer in charge. This evidence was corroborated by the witness Burke, who testified that he was present upon the work when the defendant's contract with the original contractor was discussed; that the contractor told the superintendent that there had been a mistake made by Slator, and the superintendent replied that he would not get out of his wagon and examine those things, but that he should obey the orders of Mr. Slator, the engineer in charge of the work, and work by his stakes only. With this evidence in the case the jury was justified in finding that the contractor was reasonably alert to discover the correct grade, that he apprised the superintendent of the inaccuracy of that furnished by the surveyor, and that he performed the work in accordance with the lines and grades thus given only when the superintendent of street improvements, being advised of such inaccuracies, ordered him to do so. Under these circumstances it seems quite clear that upon the authority of our former decision in this case the recovery on the last trial must be sustained, or the principle of that decision overruled.

It is to be observed that the provision in the contract upon which the defendant relies relates to grades as a whole, and not to lines or grades separately. Hence, the term "designate and fix grades" is to be construed as involving all the essen-

29

tials necessary to the complete designation and establishment
of the entire grade, including the necessary lines as well as
the depth and height of the excavation or fill. Therefore, in
considering the question of the defendant's liability for having
furnished the contractor with an erroneous grade and having,
with notice of its inaccuracy, insisted upon and required him
to construct the street upon and in accordance with it, the
same principle as to the defendant's liability should be applied
to the error relating to the required excavation or fill, as was
applied to the error as to the center line. While in our
former decision we expressly declined to pass upon the con-
struction of that term, it was, however, said: "It is to be
observed that this clause of the contract does not in terms
refer to lines, or center lines, but requires the surveyor to
'designate and fix grades.' It may be that the designation
and fixing of grades includes the giving of lines and center
lines." We now think that to hold that the term "designate
and fix grades" does not include both lines and grades, and
apply to, required excavation and filling as well as to the
center line, would be too narrow and an incorrect construc-
tion of that term as used in and intended by this contract.
Therefore, we are of the opinion that, in view of the change
in the evidence, the same rule applies to the furnishing of the
grades by the city surveyor and the requirement of the super-
intendent of street improvements that the work should be con-
formed thereto, as was applied in the former decision to the
line so furnished, the facts as they now stand being essentially
the same as to each. Obviously it was upon the basis of our
former decision that the case was tried and determined by the
courts below, as upon the last trial the learned trial court
expressly charged the jury that before the plaintiff could
recover she must prove to its satisfaction that the contractor
was directed to follow the grades and lines given by the sur-
veyor, after the defendant's attention was called to the fact
that they were incorrect.

But it is sought to be maintained that the superintendent of
street improvements, who was the chief officer under the com-

missioner of public works having direct charge and control of the work upon contracts for the regulating and grading of streets, had no right to direct the contractor to follow any grade except such as was in accordance with the profile. It is also claimed that the grades as given were not according to the profile, and, consequently, although the contractor was required to perform the work under the direction of the bureau of which the superintendent was the head, yet that the contractor was bound at his peril to disregard any and all directions given him by such officer and rely upon the profile alone. It does not seem possible that a city could, by its officers in charge of the work, compel the contractor to do work in a specified way, and then require him to expend large additional sums in doing it otherwise, without liability upon the part of the city to respond in damages for the extra work occasioned by its wrongful direction, especially where, as in this case, the trial court was justified in finding not only that the action of the city surveyor in giving the final certificate was false and made in bad faith, but also that the contractor was required by the superintendent to perform the work in accordance with the grade furnished by the city surveyor, against the protest of the contractor, and after notice by him to the superintendent that the grades thus given were erroneous. As sustaining the doctrine contended for by the defendant, it relies upon the cases of *Bonesteel* v. *Mayor, etc., of N. Y.* (22 N. Y. 162); *Glacius* v. *Black* (50 N. Y. 145); *Woodruff* v. *Roch. & Pittsburgh R. R. Co.* (108 N. Y. 39), and *Fitzgerald* v. *Moran* (141 N. Y. 419).

An examination of those cases discloses that they are clearly distinguishable from the case at bar, and were decided upon principles which have no application here. In the *Bonesteel* case it was held that where work was done under an ordinance for the grading of the street, and the contract under it provided in express terms the depth of the excavation and all the particulars of the work, to be done under the direction of the street commissioner, a change of depth from two feet to one could not be made by the officer having superintendence of

the work; that as the common council authorized the street
commissioner to contract only for the excavation of rock one
foot below the grade, he had no right to enter into a contract
for its excavation two feet below the line of the curbstone
grade; and that by assuming to make a contract different
from that authorized by the common council, he acted without
authority, and, hence, there could be no recovery.    The
*Glacius* case merely holds that where one enters into a con-
tract to furnish materials and perform work, and materials
are furnished and work performed, but not done in the man-
ner stipulated, no action will lie for the compensation, and
that, at least, a substantial performance must be shown before a
recovery can be had.    In *Woodruff* v. *Roch. & P. R. R. Co.*
the plaintiff as sub-contractor made a cut through an elevation,
and after it was substantially completed the sides caved in and
the plaintiff removed the earth upon the request of the engi-
neers in charge under an agreement that it should be taken out
for a price specified, it, however, appearing that the work was
under the supervision of the original contractors, and that they
paid all the engineers and entered into sub-contracts for the
performance of the work.    In an action against the railroad
company it was held that the evidence failed to show any lia-
bility upon its part, as it did not disclose that the work was
done under any express or implied agreement with it.    The
*Fitzgerald* case was an action upon a contract for plastering,
which provided that certain designated cement should be
mixed with equal parts of good, sharp and dry sand, while the
mixture used was made of two parts of sand to one of cement,
and it was held that neither the superintendent nor the archi-
tect had any right to thus change the contract.    Clearly the
principle of those cases has no application to the question
under consideration.

When, however, we examine the cases of *Messenger* v.
*City of Buffalo* (21 N. Y. 196, 199); *Mulholland* v. *Mayor,
etc., of N. Y.* (113 N. Y. 631, 632); *Brady* v. *Mayor, etc.,
of N. Y.* (132 N. Y. 415, 427), and *Horgan* v. *Mayor, etc.,
of N. Y.* (160 N. Y. 516, 523), we there find the prin-

ciple applicable to the case at bar, and abundant authority
to sustain the recovery in this action.   In the *Messenger* case
the city of Buffalo employed the plaintiff to pave a street and
to furnish the sand for that purpose under a contract by which ·
it was to grade the street, and the work of paving was to be
performed under the direction of the street commissioner.
The street was so excavated that a quantity of sand beyond
that specified in the contract was necessary.   The plaintiff, by
the direction of the street commissioner, furnished the excess
required, and this court held that he was entitled to compensa-
tion therefor.   In that case it was claimed that when the
plaintiff found he could not fulfill his contract in all particu-
lars he should have obtained the action of the common council
before commencing or continuing the work, but this court
said : " This could not have been absolutely required to enable
him to recover.   The corporation had authorized the street
commissioner to make the contract, and the contract made pro-
vided that the work should be done under the direction of such
commissioner.   This plainly intended that the street commis-
sioner might direct in regard to variations rendered necessary
by the action of the city authorities."   In the *Mulholland*
case there was a contract between the plaintiff's assignor and
the defendant for grading and flagging one of its streets.
Through the erroneous action of the defendant's engineer,
more work was required of the contractor than would have
been necessary under the contract, and it was held that the
plaintiff was entitled to recover.   The court said : " The change
was erroneous, and if the correction of the error, or by reason of
it, the plaintiff performed extra labor and incurred increased
expense, he is entitled to recover according to its value and
amount."   In *Brady* v. *Mayor, etc., of N. Y.*, PARKER, J., said :
" It is quite clear that it was the intention of the parties under
this contract that the contractor should in its execution be
governed by the direction of such of defendant's officers as it
declared in the contract should represent it.   So if the grade
should be mistakenly given to the contractor by the surveyor
and the work should be done in conformity therewith, and

certificates of completion afterwards given, the defendant could not thereafter object that the plaintiff should not be compensated because, as the result of a misdirection by its officers, the specifications had not been literally complied with." The *Mulholland* case was there considered and the principle established by it reaffirmed. These cases were again examined by this court in *Horgan* v. *Mayor, etc., of N. Y.,* where Judge BARTLETT said : " It has been frequently held that if a municipal corporation, by its own act, causes the work to be done by a contractor to be more expensive than it otherwise would have been according to the terms of the original contract, it is liable to him for the increased cost or extra expense." (See, also, *Moore* v. *Mayor, etc., of N. Y.,* 73 N. Y. 238 ; *Reilly* v. *City of Albany,* 112 N. Y. 30, and *Van Dolsen* v. *Bd. of Education,* 162 N. Y. 446, 452.)

An examination of the foregoing authorities and the consideration of the decision in this case upon a former appeal render it quite obvious that under the evidence as it appears in the record of the trial under review, the plaintiff was entitled to recover for the additional work he was compelled to perform by reason of the erroneous grade given him by the surveyor in charge and according to which he was required by the superintendent of street improvements, with a full knowledge of the facts, to grade the street and by whom he was subsequently required to change such grade at a large additional outlay.

These considerations lead to the conclusion that the judgment appealed from should be affirmed.

GRAY, CULLEN and WERNER, JJ., concur with HAIGHT, J.; PARKER, Ch. J., and VANN, J., concur with MARTIN, J.

Judgment accordingly.