### DETERMINED IN THE

# FIFTH DEPARTMENT,

#### AT

## GENERAL TERM,

### March, 1885.

---

## CHARLES SCHIER, Respondent, v. THE CITY OF BUFFALO, Appellant.

*Municipal corporation — liability of, upon contracts not made as required by its charter — 1870, chap. 519, tit. 9, sec. 19, as amended by 1879, chap. 486, sec. 2.*

The charter of the city of Buffalo provides that the city shall not enter into any contract with any person for the doing of any work at a price exceeding $200, until a certain notice shall have been published, "except for the sprinkling and watering of streets, which may be done without the notice prescribed herein, where a majority of the owners of property in a street petition therefor." A petition presented by the plaintiff to the common council to have a portion of one of the streets watered by him was referred by it to the assessors, who certified that it was not signed by a majority of the property owners and returned it to the common council. The petition was withdrawn, and an additional signature having been procured it was again presented to the common council. Thereafter, the assessors having reported to the common council that a majority of the owners had signed, a contract for the work was made with the plaintiff for an amount exceeding $200, without the publication of any notice. A majority of the property owners had not signed the petition, the assessors having been misled by an error in their maps, and on that ground the mayor on September twenty-fifth vetoed a resolution confirming an assessment for the work, at which time the plaintiff had virtually completed it.

*Held*, that the city was liable to the plaintiff for the value of the services rendered in pursuance of the contract so made.

That it was proper to allow the defective petition to be withdrawn, and to act upon it when perfected and refiled.

APPEAL by the defendant from a judgment, entered upon the trial of the action in the County Court of Erie county, without a jury.

The action was brought upon an alleged contract with defendant, and upon a *quantum meruit*, to recover for services rendered in sprinkling one of its streets. The plaintiff caused to be presented to the common council a petition signed by a number of persons asking to have Main street sprinkled between Goodell and High streets and the contract for the work awarded to him. The petition having been referred to the assessors, was returned by them certified to the effect that the signers were not a majority of the resident owners of property fronting on the street and liable to be taxed for it. The plaintiff was thereupon permitted to and did withdraw the petition and procured an additional name to it, when it was again presented to the common council and referred by it to the board of assessors, and they afterwards returned the petition to the common council with their certificate to the effect that it was signed by a majority of the resident owners of the lands fronting on that part of Main street, between Goodell and High streets, and the petition and certificate were then referred by the common council to the committee on streets. This committee submitted a report upon the petition and certificate recommending that the sprinkling be ordered and that a contract be made with the plaintiff at his offer of twenty-four cents per lineal foot (the price named in the petition) for the service from June 1 to October 1, 1882, and that an assessment of $452.64 be made to pay it. This report was adopted by the common council, and the street commissioner gave to the plaintiff an order directing him to do the work, and he proceeded to do it, and did it. On the 23d of October, 1882, the plaintiff presented the claim for the work to the common council and it was rejected. The assessment-roll for the work was made by the assessors, and on September 11, 1882, it was confirmed by a resolution of the common council, and on September twenty-fifth, the mayor vetoed the resolution. The assessment was not perfected. The veto was occasioned by the fact that the petition was not signed by a majority of the resident owners of property fronting on the portion of the street in question. Two warrants upon the city treasury, payable out of the fund to be produced by the assessment, having been

drawn pursuant to the direction of the common council in favor of the plaintiff, and delivered to him, were surrendered up at the trial. It appeared that the services performed by him were worth the price before mentioned.

The court determined that as the plaintiff performed in good faith the work under the contract, and the defendant had received the benefit of it, the defendant is estopped from alleging the irregularity in the petition, and directed judgment for the plaintiff, which was entered.

*Giles E. Stilwell*, for the appellant.

*E. J. Plumley*, for the respondent.

BRADLEY, J.:

This case is not free from difficulty. The authority of the city, through its officers to make the contract, depended upon the production of a petition of a majority of the resident owners of property on the street where the work was to be done, or the taking of other proceedings prescribed by the statute. The statute provides that "the city shall not enter into a contract with any person for the doing or making of any work or improvement at a price exceeding two hundred dollars, except for the sprinkling and watering of streets, which may be done without the notice as prescribed herein, where a majority of the owners of property on a street petition therefor, until they shall have published a notice, etc., * * * and shall not enter into a contract for the doing or making any such work or improvement for a price exceeding five hundred dollars, until the assessment therefor has been confirmed, except that the common council may order any street sprinkled or watered, and the city may enter into a contract therefor upon the petition of a majority of the resident owners upon said street, before the assessment therefor has been confirmed." (Laws of 1870, chap. 519, tit. 9, § 19, as amended by Laws of 1879, chap. 486, § 2.) In this case the proceedings taken, pursuant to which the contract was made with the plaintiff were founded upon the petition, and no preliminary notice was published. And it not being the petition of the requisite number of resident property owners afforded no right to make an assessment on their property

to pay the expense of the work. The contract was not *ultra vires*, but was within the powers vested in the city. The exercise of the corporate powers, the performance of its corporate duties, and the management of its affairs and property are vested in the common council. (Laws 1870, chap. 519, tit. 3, § 1.) And it may cause streets to be watered. (Id., § 6, as amended by Laws 1879, chap. 486, § 1.) There seems to be no prescribed manner of ascertaining or determining, as applied to the provision in question, that a petition does represent a majority of the requisite property owners, but the statute provides for facilities to do so in the office of the assessors where maps are kept, which are designed to represent the lots and names of the respective owners covering the lands in the city. (Id., tit. 6, § 4.) And they are to have the opportunity to see and mark down on the map a reference to all conveyances of such lands within the city before they are recorded. (Id., tit. 2, § 40.) Thus is designed to be afforded to them the means of ascertaining by reference to their maps the names of owners of property and where it is located. And in analogy to proceedings in cases requiring petition of resident owners for purposes of other improvements and assessments, the assessors may be deemed the appropriate authorities to give the information to the common council in that respect in a case like the one in question. The petition was therefore properly referred to them, and upon their certificate that it represented the majority required, the common council proceeded in the usual manner to a result which produced the contract. The statute does not permit that certificate to be conclusive. The majority is the requisite fact. There are no negative words prohibiting the action of the common council in this respect. The statute merely provides that they may, on such petition, order the work to be done and enter into contract, the effect of which is that such petition is required and that it is a condition upon which the right to exercise the power depends. It is not, however, in all cases where the municipal corporation would not be permitted to make an assessment, because of irregularity in proceedings, that a party with whom it had made a contract, founded on the same proceedings, would be without remedy. (*Moore* v. *Mayor*, 73 N. Y., 238; *Horn* v. *Town of New Lots*, 83 id., 105.) The making of such a contract was within the powers of the defendant, and all the proceed-

ings on their face were regular in form, and it may be assumed, upon the facts as found, that the plaintiff acted in good faith and in the belief that the proceedings which resulted in the contract were in all respects regular and valid, until about the time that the mayor vetoed the action of the common council, when his contract was substantially performed. He had no means of information to the contrary other than by examination of the maps in the assessors' office and the records of the county clerk's office. It appears that the imperfection of the maps in the assessors' office caused the error in their certificate, and although the plaintiff himself presented the petition, his good faith was not impaired by his failure to seek information from the clerk's office, nor did the omission to do so charge him with negligence to his prejudice. He was at liberty to rely upon the accustomed method of verifying the fact of majority through the assessors and upon the authorities to determine the sufficiency of the petition in that respect. The fact that the petition went by his motion to the common council, added nothing to his duty. The general proposition is that persons dealing with municipal corporations are required to see that the provisions of the statute under which the power is sought to be exercised are complied with, and if they are not, a contract is not effectual to give any right to relief. (*McDonald* v. *Mayor*, 68 N. Y., 23; *Smith* v. *City of Newburgh*, 77 id., 130.)

But that rule, in its absolute strictness, may not be applicable when the power exercised is that possessed by the corporation and the proceedings are apparently regular, and where a party has innocently and in good faith proceeded to expend his money, deliver his property, or perform services in performance of the contract, and of which it has received the benefit equal in value to that stipulated to be paid. In such case an equitable estoppel is justly applied which defeats the operation of the irregularity in the proceedings as against him, and requires it to pay for what it has in fact received through the apparently legal proceedings and action of its constituted authorities from the party acting upon the faith of their validity. That is the doctrine and rule well declared in *Moore* v. *Mayor* (*supra*).

We think the plaintiff acted in good faith and that his claim is within the principle of that case. The contention that the petition

as first presented became inoperative for any purpose, and could not be withdrawn and again used, is not well founded. The fact that it was found to represent less than a majority deprived it of the character of a complete petition for the purpose in view, and because incomplete it was not capable of being the subject of official action, but it remained an imperfected instrument with which the city had nothing to do. Its presentation was nugatory and could very properly be returned to him who presented it for completion. It had served no purpose in a legal sense, and therefore none of its inchoate vitality was exhausted by the process of passing from the common council to the assessors and its return certified incomplete. It was entitled to no place in any official department of the city. The subsequent effort to give it efficiency by increase of subscribers was legitimate.

If we are right in the view taken of this case it follows that the judgment should be affirmed.

BARKER and CORLETT, JJ., concurred; HAIGHT, J., not sitting.

Judgment affirmed.