(13 App. Div. 231.)

MacKNIGHT FLINTIC STONE CO. v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 22, 1897.)

1. CONTRACTS—COMPLIANCE WITH SPECIFICATIONS—QUESTION FOR JURY.
   The question of compliance with the terms of a building contract should be submitted to the jury where the work was not successful, and the contractor's statement that the specifications were carried out is opposed by the testimony of the architect in charge that, if they had been, the work would have been successful.

2. EXPERT TESTIMONY—ADEQUACY OF SPECIFICATIONS FOR WORK.
   Expert testimony is admissible as to whether a cellar would be watertight, if the specifications in a contract to make it so were carried out, where failure of the work is ascribed to faulty specifications.

3. CONTRACTS—MAKING CELLAR WATER-TIGHT.
   A contract to make a cellar "water-tight" is not carried out where, after the work is completed, water leaks in, but the contractor puts under the floor an automatic instrument which, while at work, keeps the cellar dry.

4. SAME—WAIVER OF DEFECTS IN WORK.
   A defect in work done on a public building is not waived where the commissioner of public works takes possession from necessity, but expressly states that this is done without prejudice to any rights against the contractor, and refuses to give a certificate that the work is satisfactory.

Appeal from trial term, New York county.

Action by the MacKnight Flintic Stone Company against the mayor, aldermen, and commonalty of the city of New York on a contract. From a judgment on a directed verdict for plaintiff, defendant appeals. Reversed.

The action is brought upon a contract between the plaintiff and the defendant,. executed September 25, 1895, whereby it was agreed that "the party of the second part [the plaintiff] will furnish, at his own cost and expense, all the materials and labor for the purpose, and make water-tight the boiler room, coal room, cellar, etc., of the courthouse and prison of the Seventh district police court and Eleventh judicial district court on West Fifty-Third and Fifty-Fourth streets, between Eighth and Ninth avenues, in the manner and under the conditions prescribed and set forth in the annexed specifications, which are hereby made part of this contract." The specifications provided for the construction of a floor of Portland cement concrete, and the erection of iron columns sufficient to exert a specified pressure. Up these columns to a designated height a waterproof lining was to be carried. The columns were then to be incased in. iron sleeves, the space between these and the lining to be filled in with mortar. The lining was also to be carried up the walls to a certain height, and to be protected by additional walls of a specified size and construction. The work was to be commenced upon a day fixed by the commissioner of public works, and to be finished within 30 days thereafter. It was provided that neither an extension of the time for any reason, nor the doing and the acceptance of any part of the work, should be deemed a waiver of the right to abrogate the contract for abandonment or delay. The plaintiff covenanted that, "at the entire completion of the building, all of the work must be gone over by the contractor, and turned over to the city by him in perfect order, and guarantied absolutely water and damp proof for five years from the date of the acceptance of the work. Any dampness or water breakage within that time must be made good by the contractor without any cost or expense to the city." The only witness for the plaintiff was MacKnight, its president. He testified that the work was begun, on the commissioner's order, September 30, 1895, and finished on November 4,. 1895. He stated, generally, that the work as done fully complied with the plans and specifications. After it was turned over to the defendant, it was found that water came up through the sleeves surrounding the columns, and at the base of the walls. Thereupon, by permission of Duncan, the architect, the plaintiff inserted under the floor of the cellar an automatic instrument known as: an "ejector," for the purpose of pumping out the water as it rose. It was conceded that this instrument, while at work, kept the premises dry. If it was turned off, however, the water would rise, in the course of a day or so, and cover the floor of the cellar. The defendant offered no direct evidence of details wherein the plaintiff's work did not conform to the specifications, but attempted to introduce the evidence of experts in the business of waterproofing cellars as to whether the plans and specifications were sufficient to make the cellar watertight. The evidence was excluded and an exception taken. At the close of the evidence the court directed a verdict for the plaintiff for the full amount of the contract price, and the defendant excepted.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,. WILLIAMS, and PATTERSON, JJ.

Chase Mellen, for appellant.

L. Laflin Kellogg, for respondent.

BARRETT, J. It is claimed by the plaintiff that it became entitled to the contract price upon doing the work in accordance with the plans and specifications, and that, if leaks occurred within five years after completion, it simply became bound to remedy them, without prejudice to the right to recover the agreed amount. This contention it is not necessary to consider, for we think it was error to take from the jury the question whether, in fact, the work done conformed to the specifications. MacKnight testified that it did;. but this was merely a general statement, amounting to but little more than his conclusion or opinion. There is no pretense that he was present when the work, or even the substantial part of it, was

done. There is, in truth, no evidence of the amount of time which MacKnight devoted to its inspection, nor evidence as to the nature of such inspection. Under these circumstances, if there were no other proof or attempted proof, we think the question of compliance with the specifications would, at the very least, have been for the jury. A compact and solid floor had been provided for, and a lining of waterproof material for the columns and walls. In spite of this, the water forced its way up through the floor, and the base of the walls, and up around the iron jackets to the columns. Plainly, in view of MacKnight's exceedingly general and inconclusive statements, it was for the jury to say whether this could have happened if the work had really been done in precise accord with the specifications, especially as there was no bursting of the masonry.

In view, too, of this state of the evidence, we think expert testimony upon the subject was competent, and that it was error to rule out the testimony of an expert who was familiar with the ground and the surrounding conditions. We refer to the witness Vaughan. He had been in the business of waterproofing cellars for 42 years and was fully acquainted both with the plans and specifications, and with the condition of these premises, having been a bidder for the contract which the plaintiff obtained, and having thoroughly gone into all these matters in order to make his bid. He was asked to say whether, in his opinion, the cellar could have been made watertight if the plans and specifications had been complied with. The question was excluded, and the defendant's counsel excepted. Later, the learned trial judge seems to have altered his views as to the competency of such evidence; for the architect, Duncan, was allowed to state his opinion that the cellar would have been waterproof if the work had been done as agreed, that a break the size of a pin hole would have caused the leak, and that the leak occurred because the waterproofing was not intact and continuous. This evidence should have been submitted to the jury for their consideration. It further weakened the already weak and inconclusive testimony of MacKnight, and it thus strengthened the defendant's position in requesting the submission to the jury of the question of fulfillment. Of course, expert testimony is inadmissible where the matter at issue is the existence or nonexistence of a fact capable of direct proof, if such proof is supplied. That, however, is not this case. Nor do we wish to be understood as intimating that the plaintiff, in this class of cases, must be held to an unreasonable measure of proof. When, to all appearance, work has been done as required, and fulfills its purpose, general testimony to this effect may, and should, suffice. But where the work does not fulfill its purpose, but fails in the very essence of it, the mere general statement of an interested party that he has fulfilled his contract, or testimony substantially to that effect, cannot be treated as adequate, even if the opposite party is unable to point out in detail the specific defect.

It is next claimed that, whether or not the premises were made water-tight in accordance with the plans and specifications, the plaintiff at least made them dry, and that the defendant thus became liable, either by reason of the plaintiff's inherent right to complete in

this manner, or on account of the acceptance by the defendant's agents of the work so completed. The plaintiff had no such inherent right. It was bound to furnish the defendant with a water-tight, not a water-drained, cellar. As the defendant's counsel well states, "the specifications were minutely drawn for the purpose of providing a resistance to the water pressure, not to relieve it." The premises are only dry when the ejector is working, and, if that apparatus should wear out or become damaged, it would be necessary to take up the floor, and put in another. Speculation as to whether the new arrangement is as beneficial or convenient to the defendant as that contracted for is quite out of place. It is plain that the conditions are not the same, and it is not for the court to determine whether they are as favorable or not. The defendant contracted for a particular thing, and was entitled to get that, and not a substitute for it. The defendant's agents never gave the plaintiff this right to vary the contract, and to substitute a makeshift for performance. They could not have done so; for the consolidation act (Laws 1882, c. 410, § 64), while providing that contracts are to be made by heads of departments, requires that they shall "be founded on sealed bids or proposals," and the specifications, forming part of the bid in this case, could not have been departed from even by the commissioner who executed the contract upon behalf of the city. Bonesteel v. Mayor, etc., 22 N. Y. 162. But, in fact, no agent of the defendant consented to accept the use of the ejector as a fulfillment of the contract, nor did MacKnight insist, as a condition of putting it in, that it should be accepted as full performance.

Finally, there was no acceptance of the work as done, constituting a waiver of the defect, or any conduct estopping the defendant from now insisting upon the nonfulfillment. On March 30, 1896, Commissioner Collis wrote to the architect, in answer to a number of letters from the latter as to the condition of the courthouse building. In this letter he stated that there could be no further delay; that it was necessary to take possession of the building; that this should be done, and the use of the ejector continued, without prejudice to the defendant's rights against the plaintiff; and that no certificate should, for the present, be given to the latter. Accordingly, possession was taken, and boilers, coal bins, engines, and electric light apparatus put in. There was here no acceptance of the work. The commissioner simply acted upon the existing condition of things. This was his plain duty. There was nothing in his determination, at that late day, to take possession of the building, and to make it ready for occupancy, which can change or qualify the defendant's right to insist upon the fact of nonfulfillment. Such right would be affected only by an actual, voluntary acceptance of the work as a fulfillment of the contract, with an express or implied promise to pay therefor. There is nothing of the sort here.

We think, therefore, that the questions presented by the defendant's requests should have been submitted to the jury, and that the direction of a verdict was error.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.