(21 App. Div. 405.)

## HORGAN v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. October 22, 1897.)

1. CONTRACTS—UNFORESEEN OBSTRUCTIONS—ASSUMPTION OF RISK.
    Plaintiff contracted with defendant to remove the silt, etc., from a certain pond, and construct a concrete bottom. There were outlets for the water of the pond, connecting with a sewer, but the contract provided that the conducting or draining of the water and all pumping and bailing should be furnished by plaintiff at his own cost, and be covered by the stipulated price of the work, and also provided that he should bear the expense of unforeseen obstructions, and the proposal for the work required the contractor to make a preliminary examination of the location before contracting. In fact, the sewer was obstructed, and plaintiff was obliged, in consequence, to pump the water from the pond, in order to effect the work. Held, that defendant was under no obligation to plaintiff to keep the outlets clear.

2. MUNICIPAL CORPORATIONS—CITY ENGINEER—POWERS.
    The city engineer of New York City has no power to bind the city with reference to extra work under a municipal contract for an improvement.

Appeal from trial term, New York county.

Action by William G. Horgan against the mayor, aldermen, and commonalty of the city of New York. From a judgment dismissing the complaint by direction of the court after a trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Charles W. Dayton, for appellant.

Francis M. Scott and John Proctor Clarke, for respondent.

BARRETT, J. On January 14, 1893, the plaintiff entered into a contract with the defendant, whereby he agreed to "excavate, remove, and dispose of all silt, sediment, and other materials deposited in the bottom of the 'Pond,' near Fifty-Ninth street, Fifth and Sixth avenues, and construct a concrete bottom over same." The work was accepted by the department of public parks on August 22, 1894; and on September 24, 1894, the plaintiff, in consideration of payments made to him, gave a general release of all claims arising under the contract, except a certain sum not material here, and (to quote) "any legal claim which I may have, if any, for extra work not covered by the contract herein." In this action the plaintiff seeks to recover for certain work which he claims was not within the contract, and for which he has not been paid.

The principal item of the plaintiff's claim is a bill for pumping. The facts concerning it are as follows: The pond had an outlet at one end, consisting of a circular gate 20 inches in diameter, resting on the bottom of the pond, and connecting with a branch sewer running into Fifty-Ninth street. There was also an overflow basin about 25 feet from the gate, and 5 or 6 feet higher. In the course of the work, the outlet gate was opened, but the water ran off only to 12 or 14 inches from the bottom of the gate. This was due to an obstruction in the sewer. Plaintiff then had a conversation with the engineer in charge of the work for the defendant, who told him it

would be necessary to pump out the water through the overflow basin. Plaintiff refused to do so unless paid, and, when the engineer still persisted in his direction, proceeded to set up the machinery, and do the work for which claim is now made.

The plaintiff contends that it was the defendant's duty to see to it that the outlet gate and sewer were in a state of good repair, and that he may recover for the extra work thrown upon him by its failure so to do. Admitting the premise, the conclusion seems properly to follow. It is settled law that a contractor may recover, upon a quantum meruit, the value of extra and unnecessary work imposed upon him in the performance of his contract by an unjustifiable act or omission of the other party thereto. Messenger v. City of Buffalo, 21 N. Y. 196; Mansfield v. Railroad Co., 102 N. Y. 205, 6 N. E. 386; Mulholland v. Mayor, etc., of New York, 113 N. Y. 631, 20 N. E. 856; Del Genovese v. Railroad Co., 13 App. Div. 412, 43 N. Y. Supp. 8. The crucial question in the case, therefore, is whether the defendant was under a duty to the plaintiff to furnish him the outlet gate and sewer in good working order. To determine that question, we must examine the contract between the parties in the light of the surrounding circumstances. If such an examination shows that an agreement of this nature is fairly to be implied, the plaintiff is as much entitled to recover as though it were contained in the instrument in express words.

As was said by Allen, J., in Booth v. Mill Co., 74 N. Y. 15, 21:

"There is no particular formula of words or technical phraseology necessary to the creation of an express obligation to do or forbear to do a particular thing or perform a specified act. If from the text of an agreement and the language of the parties, either in the body of the instrument or in the recitals or references, there is manifested a clear intention that the parties shall do certain acts, courts will infer a covenant in the case of a sealed instrument, or a promise if the instrument is unsealed, for nonperformance of which an action of covenant or assumpsit will lie."

But an examination of the contract leads us to believe that the defendant did not, expressly or by fair implication, assume any duty towards the plaintiff with reference to the outlet gate and sewer. Section 2 of the specifications provides that the compensation for, among other things, "all labor and materials required for conducting the flow of water through or across the area of the pond or any portion thereof, and all pumping or bailing or other work required, will be included in the price stipulated in this agreement for excavation." Section 5 reads: "All labor and materials required for conducting the flow of water through or across the area of the 'Pond' to the outlet, or for draining water from any portion of the area, and all pumping or bailing required for the proper prosecution of the work during its progress, and until its completion, will be furnished by the contractor at his own cost and expense." There seems to be here a plain provision that the plaintiff was not to receive any extra compensation for pumping work, if such work should prove necessary. If the outlet gate and sewer had been equal to draining all the water off the pond, no pumping would apparently have been required. The plaintiff would simply have had to dig drains to conduct the water to the gate. The insertion in the contract of a specific provision that,

should pumping be necessary, compensation for the work was included in the contract prices, seems clearly to show that the possibility that the gate and sewer would not prove adequate was in the defendant's mind, and that it distinctly declined to assume any liability on this account. This view is strengthened by section 33 of the specifications, which provides that "all loss or damage arising out of the nature of the work to be done under this agreement, or from any unforeseen obstructions or difficulties which may be encountered in the prosecution of the same, shall be sustained by the contractor"; and by a clause in the proposals requiring bidders to make personal examination of the location, and forbidding them thereafter from asserting "that there was any misunderstanding in regard to the nature or amount of the work to be done." Reading all these provisions together, it seems reasonably certain that the defendant neither expressly nor impliedly guarantied to the plaintiff that the outlet gate and sewer should be in good working order, and adequate to drain all the water off the pond. On the contrary, the plaintiff agreed to remove the silt and sediment at so much a cubic yard, and, as a necessary incident of the work, expressly contracted to drain the water off or pump it out if necessary. He was obliged to get the water off by some means or other. The defendant made him no promise with reference to the condition of the pond. The pond was there, and from that particular pond, in its then existing condition, he was to remove the silt and sediment, and, incidentally, the water. He was directly required to examine the pond, and learn whatever was of interest to him; and, if this examination was not sufficiently searching, the risk was his own. He was thereafter precluded from complaining about any existing feature of the work. In this view of the case, it is immaterial what the engineer said to or promised the plaintiff, since he was without power to bind the defendant by an agreement for extra work. Bonesteel v. Mayor, etc., of New York, 22 N. Y. 162; MacKnight Flintic Stone Co. v. City of New York, 13 App. Div. 231, 43 N. Y. Supp. 139.

The remainder of the plaintiff's claim arises out of a dispute between himself and the engineer as to the amount of certain excavated material. In part the dispute seems to have been caused by a difference in the mode of computation adopted by the two parties, and in part by a mere error of measurement on some one's part. The details of the controversy are not material. Concededly, the work was not extra work, but work specifically provided for and covered by the contract. Any claim with regard thereto is consequently embraced in the general release given by the plaintiff, which he made not the slightest offer or attempt to attack in any way.

The judgment should be affirmed, with costs. All concur.